[No. B126581. Second Dist., Div. Two. Mar. 31, 1999.]

VLADMIR IRAHETA et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GIL GARCETTI, as District Attorney, etc., et al., Real Parties in Interest.

**COUNSEL**

Michael P. Judge, Public Defender, Laurence Sarnoff, Albert J. Menaster, Alex Ricciardulli and Mark Harvis, Deputy Public Defenders, for Petitioners.

No appearance for Respondent.

James K. Hahn, City Attorney, Debbie Lew and Candice I. Horikawa, Deputy City Attorneys; Gil Garcetti, District Attorney, and Natasha S. Cooper, Deputy District Attorney, for Real Parties in Interest.

Joan R. Gallo, City Attorney (San Jose), George Rios, Assistant City Attorney, and Glenn D. Schwarzbach, Deputy City Attorney, for City of San Jose as Amicus Curiae on behalf of Real Parties in Interest.

**OPINION**

**BOREN, P. J.**—Petitioners, Vladmir Iraheta and Pedro Monico, alleged street gang members, claim a constitutional right to the appointment of legal counsel, at public expense, in a civil action for injunctive relief to abate a public nuisance. We hold that due process does not require such an appointment.

## I. FACTUAL AND PROCEDURAL HISTORY

The People filed a civil lawsuit seeking an injunction to abate a public nuisance, naming as defendants the 18th Street Gang, 92 individuals and 200 "Does." The complaint, which sought a preliminary and permanent injunction, alleged that petitioners and the other defendants, as members of the 18th Street Gang, were actively contributing to the nuisance in two target areas. It was alleged that the defendants have "waged a gang war, including engaging in drug dealing, shootings, robberies, drinking and urinating in

public, threatening residents, vandalizing and defacing with graffiti public and private property, trespassing on property, and other injurious activities against the residents who live and work within [the two target areas]." The People requested the issuance of an injunction barring the defendants from engaging in these activities.

After the preliminary injunction issued, the Los Angeles County Public Defender's Office (Public Defender) filed a motion asking the superior court to appoint counsel for petitioners "for the trial which will determine whether a permanent injunction will issue." The Public Defender pointed out that petitioners are indigent and cannot afford to pay for counsel, and argued that due to the unique and extraordinary circumstances of the case, petitioners should have the right to court-appointed counsel. The superior court denied petitioners' request, and this petition followed.

## II. CONTENTIONS

Petitioners contend that "due process of law requires [the appointment of counsel] to represent the indigent defendants named in the complaint."

## III. DISCUSSION

### A. *Generally, the right to counsel exists only where a litigant's physical liberty may be lost.*

██ "The Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) of the California Constitution ensure that an individual may not be deprived of life, liberty or property without due process of law. Central to this constitutional right is the guarantee that 'absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard.' [Citations.]" (*Salas* v. *Cortez* (1979) 24 Cal.3d 22, 26-27 [154 Cal.Rptr. 529, 593 P.2d 226] (*Salas*). This has been held to include the right of a defendant to appointed counsel in civil actions, but only in restricted circumstances. (*Ibid.*) Generally, ". . . the right to counsel has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation." (*Walker* v. *State Bar* (1989) 49 Cal.3d 1107, 1116 [264 Cal.Rptr. 825, 783 P.2d 184].)

### B. *Salas* and *Lassiter*

██ Petitioners, relying primarily on *Salas* and *Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18 [101 S.Ct. 2153, 68 L.Ed.2d 640]

(*Lassiter*), claim that due process of law requires the appointment of counsel for indigent defendants in a trial to determine whether a permanent injunction should be issued to abate a public nuisance—because the defendants may, at some later, undefined date, lose their physical liberty.

In *Salas*, the California Supreme Court held that indigent defendants in paternity proceedings prosecuted by the state are constitutionally entitled to appointed counsel. The *Salas* court articulated the test to be applied in determining whether due process requires the appointment of counsel in a particular case as follows: "To determine the weight of appellants' claims to appointed counsel in the present cases, this court must examine the nature and magnitude of the interests involved, the possible consequences appellants face and the features which distinguish paternity proceedings from other civil proceedings. These factors must then be balanced against the state's interests." (*Salas*, *supra*, 24 Cal.3d at p. 27.)

The *Salas* court never compared the nature of the right at stake in paternity actions to the right to physical liberty at stake in criminal cases. Instead, *Salas*'s conclusion rested on a number of factors, none of which justify appointment of counsel in the instant case. First, the *Salas* case involved "the most basic biological relationship, that of parent and child." (*Salas*, *supra*, 24 Cal.3d at p. 28.) Second, the consequences of the paternity action had probate consequences "beyond the grave." (*Ibid.*, fn. 3.) Third, the failure to support a child can be prosecuted under Penal Code section 270, during which time the prior judgment would be admissible to prove the most significant element of the crime—paternity. (24 Cal.3d at pp. 28-29, fn. 5.) Fourth, in paternity actions, the district attorney's office steps into what has traditionally been a private dispute between the mother and father to marshall its resources in favor of one private party against another. (*Id.* at pp. 29-30.) Fifth, paternity proceedings are extremely complex, involving scientific evidence, expert witnesses and unreliable testimony. (*Id.* at pp. 31-32, p. 31, fn. 7.) Based on these factors, the *Salas* court held that indigent defendants are entitled to appointed counsel in proceedings to determine paternity in which the state appears as a party or appears on behalf of a mother or child. (*Id.* at p. 34.)

Three dissenting justices criticized the *Salas* majority opinion as an expansion of due process by judicial fiat, without "any decisional precedent or statutory support," and "directly contrary to the United States Supreme Court's recent expression on the matter of appointed counsel in *Scott* v. *Illinois* (1979) 440 U.S. 367 [99 S.Ct. 1158, 59 L.Ed.2d 383]." (*Salas*, *supra*, 24 Cal.3d at pp. 34-35 (dis. opn. of Richardson, J.).)

Two years later, in *Lassiter*, the United States Supreme Court applied the same rationale to reach the same result urged by the dissent in *Salas*. The

*Lassiter* court held that the trial court's refusal to appoint counsel for an indigent parent in parental status termination proceedings did not violate the due process clause of the Fourteenth Amendment. (*Lassiter, supra,* 452 U.S. at pp. 24-32 [101 S.Ct. at pp. 2158-2162].) Given the different standards applied by the *Salas* court and the *Lassiter* court, a different outcome was understandable.

In *Lassiter,* the United States Supreme Court reviewed the historical underpinnings of the right to counsel premised on the due process clause and recognized the general rule that the right to appointed counsel attaches only when there is a risk of loss of physical liberty. "In sum, the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured." (*Lassiter, supra,* 452 U.S. at pp. 26-27 [101 S.Ct. at p. 2159].)

Unlike the court in *Salas,* the *Lassiter* court incorporated this presumption into its due process balancing test. The *Lassiter* court impliedly recognized that applying this "general rule" will not always preclude appointment of counsel where a defendant's physical liberty is not at stake. However, the general rule clearly establishes a benchmark against which all due process interests must be measured. "Significantly, as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." (*Lassiter, supra,* 452 U.S. at p. 26 [101 S.Ct. at p. 2159].) Thus, where there is little or no possibility that a defendant will be deprived of his physical liberty, he must demonstrate an extremely important interest which is sufficiently compelling to overcome the presumption that appointment of counsel is not required unless a litigant may be deprived of his physical liberty.

The court in *Lassiter* held that whether a parent has a personal liberty interest that requires appointment of counsel during termination proceedings must be determined on a case-by-case basis, by applying a two-prong test. First, the court must apply the three factors set forth in *Mathews* v. *Eldridge* (1976) 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18], i.e., "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." (*Lassiter, supra,* 452 U.S. at p. 27 [101 S.Ct. at p. 2159].) Second, the court must balance the "net weight" of the three *Eldridge* factors "against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." (*Ibid.*)

The first prong of *Lassiter's* balancing test is similar to the balancing test employed in *Salas*. However, the most critical factor in *Lassiter's* balancing test—the factor that implicitly recognizes the significance of a defendant's particularly weighty interest in physical freedom—is absent from *Salas's* balancing test. As demonstrated by the result reached in *Lassiter*, this final balancing test is dispositive.

In *Salas*, the California Supreme Court found that the due process clause requires the appointment of counsel in every paternity proceeding prosecuted by the state, regardless of the underlying facts. *Lassiter's* analysis of the three *Eldridge* factors was nearly identical to *Salas's* analysis.[1] Yet, when *Lassiter* applied the second prong of its balancing test to proceedings to terminate the parental relationship, it concluded that the net weight of these factors did not overcome the presumption that there is a right to appointed counsel only where the indigent may lose his personal freedom. Thus, the *Lassiter* court found that the trial court did not err when it refused to appoint counsel.

The *Lassiter* court did not specify what kind of a personal liberty interest could be as weighty as a physical liberty interest. However, the court noted that the *Eldridge* factors might overcome the presumption against the right to appointed counsel "[i]f, in a given case, the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak." (*Lassiter, supra,* 452 U.S. at p. 31 [101 S.Ct. at p. 2162].) "[S]ince the *Eldridge* factors will not always be so distributed, and since 'due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed,' *Gagnon* v. *Scarpelli* [(1973)] 411 U.S. [778,] 788 [93 S.Ct. 1756, 1763, 36 L.Ed.2d 656], neither can we say that the Constitution requires the appointment of counsel in every parental termination proceeding. We therefore adopt the standard found appropriate in *Gagnon* v. *Scarpelli*, and leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review. [Citation.]" (*Lassiter, supra,* 452 U.S. at pp. 31-32 [101 S.Ct. at p. 2162].)

Petitioners urge this court to disregard the general rule and thus to ignore the second prong of the *Lassiter* test. In support of this argument, petitioners

---

[1]The *Lassiter* court found that the parent's interest was extremely important and supplemented by the danger of criminal liability; the state shares the parent's interest in a correct decision and has a relatively weak pecuniary interest in informal procedures; and the complexity of the proceedings could be enough to make the risk of an erroneous deprivation insupportably high. (*Lassiter, supra,* 452 U.S. at p. 31 [101 S.Ct. at pp. 2161-2162].)

contend that under the California Constitution, the right to appointed counsel is not limited to proceedings which place a defendant in immediate danger of the loss of physical liberty. Petitioners assume *Salas* was based on a more expansive reading of the California Constitution, citing cases generally recognizing the state Constitution as a document of independent force. (See *Allen* v. *Superior Court* (1976) 18 Cal.3d 520 [134 Cal.Rptr. 774, 557 P.2d 65], 525; *Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834, 842 [117 Cal.Rptr. 437, 528 P.2d 45].) However, petitioners' interpretation of *Salas* is not supported by the language in *Salas* or by the cases upon which *Salas* relied.

The *Salas* decision mentioned the California Constitution only once in its prefatory remarks. In the remainder of its decision, the *Salas* court relied entirely on United States Supreme Court cases or on California cases construing the due process clause of the United States Constitution. At no time did the court in *Salas* suggest that it was departing from California's general rule of deference—that the California Constitution should only be interpreted more broadly when there are cogent reasons, independent state interests requiring additional protection, or strong countervailing policies justifying an independent reliance on a broader construction of the California Constitution. (*Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 353 [276 Cal.Rptr. 326, 801 P.2d 1077].)

Petitioners' assumption that *Salas* was based on the California Constitution is further undermined by the language in *In re Love* (1974) 11 Cal.3d 179 [113 Cal.Rptr. 89, 520 P.2d 713]—a case upon which *Salas* relied. In *Love*, the California Supreme Court rejected petitioner's contention that he was denied his right to counsel at a prerevocation and formal revocation hearing, but concluded that in particular instances, a parolee may be entitled to counsel at the revocation hearings. The petitioner in *Love* relied on the California Constitution to argue that the balancing process necessarily required counsel in every case. (*Id.* at p. 190.) However, the court refused to give petitioner's federal due process rights "greater effect by construction of parallel provisions of our state Constitution." (*Id.* at p. 189.) Instead, the court concluded that the case-by-case approach adopted by the United States Supreme Court in *Gagnon* v. *Scarpelli* (1973) 41 U.S. 778, 788 [93 S.Ct. 1756, 1763, 36 L.Ed.2d 656] "is equally applicable under both federal and state constitutional requirements." (*In re Love, supra*, 11 Cal.3d at p. 190.)

In the 17 years following the *Lassiter* decision, California courts have, for the most part, adhered to the general rule announced in *Lassiter* and have

relied on *Salas* to do so.[2] In *Walker* v. *State Bar, supra,* 49 Cal.3d 1107, the California Supreme Court held that "[f]undamental fairness sufficient to meet the demands of due process has never been held to encompass the right to assistance of counsel in State Bar disciplinary proceedings, under either the United States Constitution or the California Constitution." (*Id.* at p. 1116.) "On the contrary, the general rule is that there is no due process right to counsel in civil cases. (*White* v. *Board of Medical Quality Assurance* (1982) 128 Cal.App.3d 699, 707 . . . [civil disciplinary action against medical licensee].) Generally speaking, the right to counsel has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation. (*Lassiter* v. *Department of Social Services* (1980) 452 U.S. 18, 25 [68 L.Ed.2d 640, 648, 101 S.Ct. 2153]; *Salas* v. *Cortez* (1979) 24 Cal.3d 22, 34 [154 Cal.Rptr. 529, 593 P.2d 226]." (*Walker* v. *State Bar, supra,* 49 Cal.3d at p. 1116; see also *In re Sade C., supra,* 13 Cal.4th 952, 986-987 [recognizing general rule in appeal from order terminating parental rights]; *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1153, fn. 6 [65 Cal.Rptr.2d 913] [recognizing general rule in state-initiated civil dependency hearing]; *Clark* v. *Superior Court* (1998) 62 Cal.App.4th 576, 583-592 [73 Cal.Rptr.2d 53] [indigent parents sued by the district attorney for reimbursement of welfare payments received by their children have no right to counsel]; *People* v. *$30,000 United States Currency* (1995) 35 Cal.App.4th 936, 942-944 [41 Cal.Rptr.2d 748] [no right to counsel in drug forfeiture proceedings]; *In re Andrew S.* (1994) 27 Cal.App.4th 541, 549 [32 Cal.Rptr.2d 670] [no constitutional right to legal counsel in a hearing to determine whether parental rights should be terminated]; *Guardianship of Ethan S.* (1990) 221 Cal.App.3d 1403, 1412-1414 [271 Cal.Rptr. 121] [husband of child's mother had no right to counsel in legal proceedings to establish guardianship of child]; *Chevalier* v. *Dubin* (1980) 104 Cal.App.3d 975, 979 [164 Cal.Rptr. 118] [suggesting that there is no right to counsel in a civil action involving punitive damages].)[3]

---

[2] We are aware that the court in *In re Jay R.* (1983) 150 Cal.App.3d 251 [197 Cal.Rptr. 672], held that *Salas* was based on the California Constitution. As noted above, we disagree. Implicit, we believe, in the California Supreme Court's reliance on *Lassiter* in cases decided subsequent to *Salas* is that under either the California Constitution or the United States Constitution, the test set forth in *Lassiter* is to be applied in determining when due process of law compels appointment of counsel for an indigent person. (See *Walker* v. *State Bar , supra,* 49 Cal.3d 1107, 1116; *In re Sade C.* (1996) 13 Cal.4th 952, 986-987 [55 Cal.Rptr.2d 771, 920 P.2d 716].)

[3] California cases finding a due process right to legal counsel since *Salas* have involved the parent-child relationship. For example, the court in *In re Jay R., supra,* 150 Cal.App.3d at pages 260-265, held that a natural parent has a right to legal counsel where a stepparent seeks to adopt the natural parent's child without the natural parent's consent. And, a few courts have found a right to legal counsel in child support actions brought by a county. (See *County of Orange* v. *Dabbs* (1994) 29 Cal.App.4th 999 [35 Cal.Rptr.2d 79]; *County of Ventura* v.

C. *Application of Lassiter's balancing test compels the conclusion that petitioners do not have a right to appointed counsel.*

Petitioners' asserted interests in this case are significantly different than the interests recognized in the cases upon which they rely. In all of those cases, the courts have only recognized a right to appointed counsel where the proceedings may result in a deprivation of physical liberty or adversely impact the parent-child relationship. In *Lassiter*, the court recognized that the termination of a parent-child relationship works "a unique kind of deprivation. [Citations.]" (*Lassiter*, *supra*, 452 U.S. at p. 27 [101 S.Ct. at p. 2160].)

Under either the test articulated in *Salas* or the first prong of the *Lassiter* test, petitioners must establish that these civil proceedings may deprive them of an interest that is as fundamental as a right to physical liberty or as paramount as the right to the care, custody and management of one's child.

1. *The private interests at stake are not comparable to the parental interests at stake in Salas and Lassiter.*

■ Not all "liberty interests" are protected by the due process clause. In recent decades, the United States Supreme Court has restricted the scope of substantive due process. (*Armendariz* v. *Penman* (9th Cir. 1996) 75 F.3d 1311, 1319.) "[R]ecent jurisprudence restricts the reach of the protections of substantive due process primarily to liberties 'deeply rooted in this Nation's history and tradition.' [Citation.] Thus, the Fourteenth Amendment protects against a State's interferences with 'personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education,' as well as with an individual's bodily integrity. [Citations.] These areas represent a 'realm of personal liberty which the government may not enter.' [Citation.]" (*Ibid.*)

■ In *Lassiter* and *Salas*, the cognizable liberty interest was "a parent's desire for and right to 'the companionship, care, custody, and management of his or her children' . . . ." (*Lassiter*, *supra*, 452 U.S. at p. 27 [101 S.Ct. at p. 2159]; *Salas*, *supra*, 24 Cal.3d at p. 28.) Petitioners, however, do not claim a "liberty interest" in the conduct which is the focus of the injunction. Instead, petitioners' claim of a "liberty interest" rests primarily on two arguments. First, they might be prosecuted for violating Penal Code section 166—willful disobedience to a lawfully issued court order—if they violate

---

*Tillett* (1982) 133 Cal.App.3d 105 [183 Cal.Rptr. 741].) These cases involve either very similar "fundamental biological relationship" issues as those discussed in *Salas* or the obligation to support one's children, which the California Supreme Court has characterized as being "among the most fundamental obligations recognized by modern society." (*Moss* v. *Superior Court* (1998) 17 Cal.4th 396, 410 [71 Cal.Rptr.2d 215, 950 P.2d 59].)

the preliminary injunction at some future time. And second, their right to travel and associate freely within the "target areas" will be restricted.

The *Lassiter* court rejected petitioners' first argument when it recognized that the possibility that a defendant may lose his physical liberty is not sufficient to require the right to appointed counsel. In fact, even in criminal cases, the Supreme Court has refused to extend the right to appointed counsel in proceedings which do not result in a defendant's loss of physical liberty. "The Court in *Scott* v. *Illinois*, 440 U.S. 367 [99 S.Ct. 1158, 59 L.Ed.2d 383], for instance, interpreted the 'central premise of *Argersinger* [v. *Hamlin* (1972) 407 U.S. 25 [92 S.Ct. 2006, 32 L.Ed.2d 530]]' to be 'that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment,' and the Court endorsed that premise as 'eminently sound and warrant[ing] adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel.' [*Scott* v. *Illinois*, 440 U.S. at p. 373 [99 S.Ct. at p. 1162].]" (*Lassiter, supra*, 452 U.S. at p. 26 [101 S.Ct. at p. 2159].)

Petitioners' only support for their argument is a reference to one of the many factors relied on in *Salas*. There, the court considered the fact that the failure to support a child can be prosecuted under Penal Code section 270, at which time the prior judgment would be admissible to prove the most significant element of the crime—paternity. (*Salas, supra*, 24 Cal.3d at pp. 28-29.) "This appears to be the only instance where a civil judgment is admissible in a criminal proceeding for the truth of the matters stated in that civil judgment. [Citation.]" (*Id.* at p. 29, fn. 5.)

Petitioners fail to recognize that the "liberty interest" in *Salas* was based primarily on a recognized personal liberty interest—the parent-child relationship. The possibility that defendant would suffer the loss of his physical liberty, while a factor, was not a determinative factor.[4] Moreover, the *Salas* court observed that the finding in the civil paternity action directly and immediately implicated the risk of incarceration for a violation of Penal Code section 270. In significant contrast, petitioners in this case cannot be prosecuted for a violation of Penal Code section 166 unless they commit a future violation of the preliminary injunction. And even if petitioners are prosecuted for a violation of section 166, the People would still have to offer proof of a "lawfully issued order." In those proceedings, petitioners would

---

[4]The *Lassiter* court also recognized that the danger of criminal liability was inherent in some parental termination proceedings. (*Lassiter, supra*, 452 U.S. at p. 31 [101 S.Ct. at pp. 2161-2162].) However, *Lassiter* nevertheless concluded that the trial court's refusal to appoint counsel did not violate due process. This outcome would have been impossible if the mere threat of future criminal liability had been a determinative factor.

have the right to appointed counsel and would be entitled to contest the jurisdictional validity of the preliminary injunction. (*People* v. *Gonzalez* (1996) 12 Cal.4th 804, 818-819 [50 Cal.Rptr.2d 74, 910 P.2d 1366].)[5]

Petitioners would also have the opportunity to litigate the issue of whether they actually violated the underlying order.

If the possibility of future imprisonment for violation of the preliminary injunction was the determinative factor, counsel would have to be appointed in every case in which the court lawfully issues an order which might be violated in the future. This result disregards the fact that the instant injunction proceedings do not directly implicate the possibility of incarceration and disregards the fact that petitioners have no other equally weighty personal liberty interest at stake.

Finally, petitioners' request that this court recognize a due process "liberty interest" based on a threatened violation of their First Amendment rights must also be rejected. In *People* ex rel. *Gallo* v. *Acuna* (1997) 14 Cal.4th 1090, 1119-1122 [60 Cal.Rptr.2d 277, 929 P.2d 596], the California Supreme Court examined a similar "gang injunction" and rejected defendants' First Amendment claims. The *Acuna* court first held there was no violation of defendant gang members' right to associate with other gang members. (*Id.* at pp. 1110-1111.) The court also rejected defendants' overbreadth argument, finding no possibility of a chilling effect on the First Amendment right of persons not before the court. (*Id.* at pp. 1112-1116.) Under the facts of this case, it cannot be said that petitioners' interests in continuing to engage in conduct which constitutes a public nuisance is " 'a compelling one, ranked among the most basic of civil rights . . . .' [Citations.]" (*Salas, supra,* 24 Cal.3d at p. 28.)

*2. The government has significant interests which outweigh petitioners' right to continue to engage in activities that constitute a public nuisance.*

Petitioners claim that the state has no interest in "erroneously branding a person as a gang member and imposing the strictures of an injunction upon an innocent person." Petitioners, however, confuse *Lassiter*'s second factor (the government's interest) with *Lassiter*'s third factor (the risk that the procedures used will lead to erroneous decisions). Although petitioners' interest in an accurate and just decision is obvious, the People also have a

---

[5]Petitioners can directly attack the jurisdictional validity of the judgment by complying with the order while seeking a judicial declaration as to its jurisdictional validity. Or, they may disobey the order and raise their jurisdictional contentions by way of collateral attack when they are sought to be punished for such disobedience. (*In re Berry* (1968) 68 Cal.2d 137, 148-149 [65 Cal.Rptr. 273, 436 P.2d 273].)

legitimate interest in avoiding the expense of appointed counsel and the cost of the lengthened proceedings his or her presence may cause. (*Lassiter*, *supra*, 452 U.S. at p. 28 [101 S.Ct. at p. 2160].) While this legitimate interest may not be significant enough to overcome a parent's interest in the companionship, care, custody and management of his or her child, it is sufficient to overcome petitioners' interest in engaging in activities within the target areas which deprive other people of the comfortable enjoyment of their lives and property.

In *Guardianship of Ethan S.*, the appellate court recognized the state's " 'significant interest in the fiscal implications of court-appointed counsel' " when it refused to extend the right to appointed counsel in guardianship proceedings. "Declaring a right to appointed counsel here would leave few paternity cases, if any, in which there was no such right for an indigent defendant. 'The financial ramifications could well be extraordinary. [Citation.]' [Citation.]" (*Guardianship of Ethan S.*, *supra*, 221 Cal.App.3d at p. 1414, citing *Conservatorship of Sides* (1989) 211 Cal.App.3d 1086, 1093 [260 Cal.Rptr. 16].)

Petitioners' suggestion that the government's interest is limited to "imposing the strictures of an injunction upon an innocent person" rings hollow under the facts of this case. Here, the purpose of the proceedings is not to punish petitioners. Rather, the purpose of these proceedings is to protect the rights of people residing and working in the target area and the rights of members of the public in the target area to comfortably enjoy their lives and property free from unlawful interference. (Civ. Code, §§ 3479, 3480.) As recognized by the California Supreme Court in *Acuna*: "To hold that the liberty of the peaceful, industrious residents of Rocksprings must be forfeited to preserve the illusion of freedom for those whose ill conduct is deleterious to the community as a whole is to ignore half the political promise of the Constitution and the whole of its sense." (*People* ex rel. *Gallo* v. *Acuna*, *supra*, 14 Cal.4th at p. 1125.) Under these circumstances, the government interests weigh more heavily in favor of denying court-appointed counsel than in the cases relied on by petitioners.

### 3. There is little risk that the procedures will lead to an erroneous decision.

Without citation to relevant authority, petitioners accuse the state of marshalling its enormous resources against an individual. We recognize that the *Salas* court used similar language when it noted that ". . . appellants were opposed by the full resources of the state, marshalled on the plaintiffs' behalf." (*Salas*, *supra*, 24 Cal.3d at p. 30.) But this argument again ignores

the critical differences between the facts presented in *Salas* and those in the instant case.

In *Salas*, the court observed that the lack of counsel in paternity proceedings led to an unreliable judgment due to the complexity of the proceedings and the intervention of the state in what had traditionally been a private affair between a mother and the man she named as the father of her child. Here, the state is not intervening in what has traditionally been a private affair. Rather, the People are attempting to enjoin a public nuisance which, by definition, is "one which affects at the same time an entire community or neighborhood, or any considerable number of persons." (Code Civ. Proc., § 3480.)

As accurately predicted by the dissent in *Salas*: "It is an undeniable fact of life that in many civil suits the parties are unequally matched in terms of legal representation even though there may be potentially serious legal consequences and the defendant's reputation may suffer as the result of an adverse judgment. We need not, and cannot, by judicially rearranging financial burdens seek to equalize all such legal conflicts by fastening a new fiscal obligation on the public taxpayer." (*Salas, supra*, 24 Cal.3d at p. 37 (dis. opn. of Richardson, J.).) Subsequent cases have verified the soundness of the dissent in *Salas*.

In *Clark v. Superior Court, supra*, 62 Cal.App.4th 576, the Court of Appeal held that due process did not require the appointment of counsel in proceedings held to enforce support obligations by absent parents under title IV-D of the Social Security Act. (42 U.S.C. former § 651.) The petitioners in *Clark* argued that California common law and constitutional law impose greater burdens on public funds than federal constitutional law. Petitioners relied particularly on language from *Salas* suggesting that the imbalance in litigation resources between the state and an indigent litigant was among the bases for the decision. The *Clark* court rejected this argument, finding that none of the cases cited by petitioners has "been so bold as to state that imbalance of resources is its own, independent factor which would justify a result under California law not otherwise called for under *Lassiter*. And clearly, imbalance cannot be a decisive factor, as it is the rare case where the state does not have greater resources than a private party in any sort of litigation. If imbalance were decisive then every category of case in which the state is a litigant against a private party would require the presence of taxpayer-funded counsel to ease the ambient 'disparity in bargaining power.' As we have seen, civil tax cases and drug forfeiture cases disprove that notion." (*Clark v. Superior Court, supra*, 62 Cal.App.4th at p. 591, italics omitted.)

Petitioners' reliance on *Salas* to argue that the risk of an erroneous decision is more likely due to the complexity of the facts is also misplaced. The only issue petitioners have identified that cannot be raised by way of subsequent collateral attack (if and when petitioners violate the preliminary injunction) is whether petitioners are gang members.[6] This is not a complex legal issue. Petitioners need neither a scientific expert nor legal expertise to admit or deny the allegation of gang membership. This factual issue is far less complex than the validity and interpretation of blood group tests at issue in *Salas*.

4. *The factors listed are not sufficient to rebut the presumption that there is no right to appointed counsel in the absence of a deprivation of liberty.*

According to the *Lassiter* court, "[t]he dispositive question, which must . . . be addressed, is whether the three *Eldridge* factors, when weighed against the presumption that there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty, suffice to rebut that presumption and thus to lead to the conclusion that the Due Process Clause requires the appointment of counsel." (*Lassiter, supra*, 452 U.S. at p. 31 [101 S.Ct. at p. 2161].)

We conclude that the "net weight" of the three *Eldridge* factors does not weigh in favor of appointment of counsel. Given our conclusion, it follows that the "net weight" of the three *Eldridge* factors is insufficient to overcome the presumption that appointment of counsel is not required absent a potential deprivation of physical liberty. This is simply not a case where petitioners' interests are at their strongest, the People's interests are at their weakest, and the risks of error are at their peak. (*Lassiter, supra*, 452 U.S. at p. 31 [101 S.Ct. at pp. 2161-2162].)

Under the facts of this case, neither *Salas* nor *Lassiter* compels appointment of counsel as a requirement of due process.

## IV. CONCLUSION

Due process does not require that defendants in civil actions to abate the conduct of criminal street gangs as a public nuisance be given legal counsel

---

[6]Petitioners' suggestion that the only opportunity they will have to raise this issue is in the immediate superior court proceedings is incorrect. Petitioners can directly attack the trial court's findings by appealing from the granting of the injunction (Code Civ. Proc., § 904.1, subd. (a)(6)); moving to modify or dissolve the injunction (Code Civ. Proc., § 533); and appealing from the court's order refusing to dissolve the injunction (Code Civ. Proc., § 904.1, subd. (a)(6)).

at public expense. To expand the due process right of legal counsel to the alleged gang members in this case would be unprecedented, and would result in the expansion of the right to counsel to a number of other civil actions. Such a pervasive expansion could place a tremendous financial burden on both the state and local entities. We conclude that petitioners are not entitled to the appointment of counsel.

## V.   DISPOSITION

Accordingly, the petition for writ of mandate is denied. The temporary stay is vacated.

Nott, J., and Zebrowski, J., concurred.

Petitioners' application for review by the Supreme Court was denied June 16, 1999. Kennard, J., and Chin, J., were of the opinion that the petition should be granted.