Filed 5/3/13  In re Pedro G. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re PEDRO G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PEDRO G.,<br><br>    Defendant and Appellant. | G046787<br><br>(Super. Ct. Nos. DL040302-001, DL040302-002)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Deborah J. Chuang, Judge.  Affirmed.

Gerard J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

Pedro G. appeals from an order after the juvenile court declared him a ward of the court pursuant to Welfare and Institutions Code section 602, found true he committed two counts of disobeying a gang injunction, and placed him on probation with credit for time served. Pedro argues insufficient evidence supports the conclusion he was an active participant of a criminal street gang and the gang injunction violated his federal and state due process rights. Neither of his contentions have merit, and we affirm the judgment.

FACTS

On January 25, 2008, an Orange County Superior Court judge issued a permanent injunction (the Injunction) against the "Varrio Chico" criminal street gang (Varrio Chico). The Injunction prohibits Varrio Chico gang members from associating with other Varrio Chico gang members and associates of Varrio Chico in the "Safety Zone" identified in the Injunction. The Safety Zone is Varrio Chico's claimed territory in the City of San Clemente.

On May 12, 2011, Orange County Deputy Sheriff Ashraf Abdelmuti served Pedro and his parents with the Injunction and explained the Injunction to him. Pedro was not named in the Injunction but was served as a "person[] acting under, in concert with, for the benefit of, at the direction of, or in association with" any of the named gang members. Abdelmuti also served another known Varrio Chico gang member with the Injunction.

On May 27, 2011, Abdelmuti saw Pedro in front of a liquor store within the Safety Zone with another known Varrio Chico gang member, who had also been served with the Injunction. Abdelmuti arrested Pedro for violating the Injunction.

On September 9, 2011, Abdelmuti saw Pedro standing on a street corner within the Safety Zone with a known active participant of Varrio Chico, the same person who he was with when Abdelmuti served him with the Injunction. Abdelmuti arrested Pedro for violating the Injunction.

2

A petition subsequent charged Pedro with misdemeanor disobeying a gang injunction on May 27, 2011.  (Pen. Code, § 166, subd. (a)(9).)[1]  Another petition charged Pedro with misdemeanor disobeying a gang injunction on September 9, 2011.  (§ 166, subd. (a)(9).)  The petitions were joined for purposes of trial.

At trial,[2] Abdelmuti testified concerning his background, training, and experience concerning criminal street gangs generally, Varrio Chico specifically, and the Injunction.  Abdelmuti stated one of Varrio Chico's rivals was "Varrio Viejo," a neighboring San Juan Capistrano gang.

Abdelmuti explained that on the May 27, 2011, and September 9, 2011, incidents, where he observed Pedro with known Varrio Chico gang members, Pedro was "posting up."  Abdelmuti explained:  "'Posting up' is a term used by gang members to describe somebody who is standing in a location making their presence known.  It's simply to remind members of the community of their gang members or rivals that the gang is in existence and members are still around.  It's a form of intimidation to the community and rival gang members."  Abdelmuti stated both known addresses for Pedro were located in the Safety Zone.

Abdelmuti testified that based on his personal contacts with Pedro and a review of law enforcement records, he believed Pedro was an active participant in Varrio Chico in May and September 2011.  Abdelmuti based his opinion on the following contacts:

---

[1]     All further statutory references are to the Penal Code, unless otherwise indicated.  Section 166, subdivision (a)(9), was renumbered subdivision (a)(10), without substantive change.

[2]     There were actually two hearings, one for each petition.  Abdelmuti's testimony was nearly identical at both hearings.

3

(1) On August 28, 2009, Abdelmuti issued Pedro a field identification card[3] after Pedro admitted that he was associating with Varrio Chico;

(2) On September 25, 2009, Abdelmuti contacted Pedro, who was 13 years old. Pedro explained his brother introduced him to Varrio Chico gang members, he had been associating with them for about one year, and he "look[ed] forward to putting in work and going to prison" for the gang;

(3) On March 19, 2010, a sheriff issued Pedro a STEP notice[4] after the sheriff observed Pedro at the house of a known Varrio Chico gang member and in the company of three other known Varrio Chico gang members;

(4) On April 30, 2010, Abdelmuti contacted Pedro with two known Varrio Chico gang members;

(5) On May 3, 2010, an officer issued Pedro a field identification card after he was contacted with a known Varrio Chico gang member, but Pedro denied being a member of Varrio Chico or having a gang moniker;

(6) On May 6, 2010, Abdelmuti contacted Pedro, who was alone, and Pedro denied he was a member of Varrio Chico or that he had a gang moniker;

(7) On June 25, 2010, Abdelmuti contacted Pedro, who was with another known Varrio Chico gang member, and Pedro denied being jumped into Varrio Chico but "admitted he would back up the gang[;]"

---

[3]     Abdelmuti testified a field identification card is a card law enforcement officers complete when they interview an individual. The card includes the individual's contact information, if the individual was with anyone during the contact, an individual's statements, and the individual's clothing.

[4]     Abdelmuti testified a STEP notice is a document that advises an individual he is associating with members of a criminal street gang and is subject to enhanced penalties for committing crimes for the benefit of the gang. The STEP notice includes the same information as the field identification card.

4

(8) On December 28, 2010, Abdelmuti contacted Pedro with two known Varrio Chico gang members;

(9) On January 7, 2011, an officer issued Pedro a field identification card after he was contacted with a known Varrio Chico gang member;

(10) On January 20, 2011, Abdelmuti issued Pedro a STEP notice after contacting Pedro with two known Varrio Chico gang members. Pedro admitted "hanging out" with Varrio Chico for the last year and a half and stated he liked the "gangster lifestyle" and was willing to go to jail for the gang; and

(11) On June 7, 2011, an officer issued Pedro a field identification card after he was contacted with another known Varrio Chico gang member.

On cross-examination, defense counsel questioned Abdelmuti extensively about Pedro's brother, German G. Counsel noted that if Pedro and German, an active participant of Varrio Chico, were at a family gathering at the beach, an area in the Safety Zone, they would both be in violation of the Injunction. Abdelmuti stated gang members now lie to officers and deny gang membership to avoid the gang enhancements. Abdelmuti testified that in all but one of his law enforcement contacts Pedro denied being an actual member of Varrio Chico. He also denied having a gang moniker, although Abdelmuti said Pedro does have a gang moniker.

The juvenile court found true the allegations that on May 27, 2011, and September 9, 2011, Pedro disobeyed the Injunction. The court declared Pedro a ward of the court, found the maximum term of confinement on each offense was eight months, and placed him on probation with terms and conditions.

DISCUSSION

I. *Sufficiency of the Evidence*

Pedro argues there was insufficient evidence he was an active participant in Varrio Chico at the time of the offenses. We disagree.

5

"In considering a challenge to the sufficiency of the evidence . . . , [the appellate court] review[s] the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] [It] presume[s] every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*).) The standard of review in juvenile cases is the same. (*In re Z.A.* (2012) 207 Cal.App.4th 1401, 1424.)

The street terrorism substantive offense, section 186.22, subdivision (a), states: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished . . . in the state prison for 16 months, or two or three years." There are three elements to the substantive street terrorism offense: (1) active participation in a criminal street gang; (2) knowledge the gang's members have engaged in a pattern of criminal gang activity; and (3) willfully promoting, furthering, or assisting in any felonious criminal conduct by members of the gang. (*Albillar, supra,* 51 Cal.4th at p. 56.)

"[F]or the purposes of a gang injunction an active gang member is a person who participates in or acts in concert with an ongoing organization, association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of acts constituting the enjoined public nuisance, having a common name or common identifying sign or symbol and whose members individually

6

or collectively engage in the acts constituting the enjoined public nuisance. The participation or acting in concert must be more than nominal, passive, inactive or purely technical." (*People v. Englebrecht* (2001) 88 Cal.App.4th 1236, 1261, citing *People v. Castenada* (2000) 23 Cal.4th 743, 747.)

Pedro raises numerous claims to support his contention he was not an active participant in Varrio Chico at the time of the offenses. He asserts: (1) the contacts were a "series of isolated contacts" over two and one-half years, most of which involved standing around talking to acquaintances, including his brother; (2) he lived in the Safety Zone and the contacts were at or near his residence; (3) during the contacts he repeatedly denied being an actual member of Varrio Chico or having a gang moniker; (4) there was no evidence he was "jumped" into Varrio Chico; (5) there was no evidence he engaged in *any* criminal activity; (6) he did not have any gang tattoos; (7) there was no evidence he wore gang attire or flashed gang signs on the days in question; and (8) his immature boasting about his future intentions were unbelievable.

Unfortunately, Pedro ignores the other evidence that does support the juvenile court's finding there was sufficient evidence Pedro was an active participant on the dates of the offenses. (*Albillar, supra,* 51 Cal.4th at pp. 59-60 [we will not reverse judgment simply because circumstances might reasonably be reconciled with contrary finding].) There was testimony that when Abdelmuti served Pedro with the Injunction, Pedro had at least 10 prior contacts with law enforcement, most of which involved Pedro associating with other known Varrio Chico gang members. Pedro characterizes these contacts as isolated incidents, but they can also be characterized as a pattern of gang association.

One of those contacts, on January 20, 2011, was just four months before Abdelmuti served Pedro with the Injunction. During that contact, Abdelmuti issued Pedro a STEP notice. Pedro admitted to Abdelmuti he had been associating with Varrio Chico gang members for about a year and one-half, a date that roughly corresponded with

Abdelmuti's first contact with Pedro on August 28, 2009. During the January 20, 2011, contact, Pedro also told Abdelmuti he liked the gangster lifestyle and was willing to go to jail for the gang. And one month after Abdelmuti served Pedro with the Injunction, an officer contacted Pedro with a known Varrio Chico gang member. Clearly, law enforcement officers had identified Pedro as someone who associated with Varrio Chico and warned him that continuing to do so could prove detrimental.

With respect to the offenses, on both May 27, 2011, and September 9, 2011, Abdelmuti observed Pedro posting up with other known Varrio Chico gang members in the Safety Zone. Abdelmuti explained the purpose of posting up is to intimidate the community and rival gang members by notifying them Varrio Chico exists and is patrolling its claimed territory. Although there was no evidence Pedro wore gang attire, flashed gang signs, or committed other gang conduct on behalf of Varrio Chico, Pedro was representing Varrio Chico by posting up in the Safety Zone. Based on Pedro's numerous contacts with law enforcement officers, his statements to Abdelmuti concerning his willingness to serve jail time for the gang, and his representing Varrio Chico on the days of the offenses, there was sufficient evidence from which the trier of fact could reasonably conclude Pedro was an active participant of Varrio Chico in May and September 2011. Finally, Pedro asks us to discount his statements concerning his attraction to gang life and willingness to serve jail time but at the same time believe his statements denying he is a gang member and has a gang moniker. As we explain above, the juvenile court concluded there was sufficient evidence Pedro was an active participant of Varrio Chico at the time of the offenses, and it is not our role on appeal to second guess the court's credibility determination.

We recognize Pedro lived in the Safety Zone and his brother was a known Varrio Chico gang member. But there is a difference between greeting an acquaintance and moving on and posting up in gang territory. Thus, there was sufficient evidence for

8

the trier of fact to reasonably conclude that at the time of the offenses, in May and September 2011, Pedro was an active participant in Varrio Chico.[5]

## II. Due Process

Pedro contends the Injunction violated his federal and state constitutional due process rights because the Injunction did not specifically name him, he did not have notice and an opportunity to challenge the application of the Injunction to him. We reject his contention.

People EX REL. Totten v. Colonia Chiques (2007) 156 Cal.App.4th 31 (*Colonia Chiques*), is instructive. In *Colonia Chiques, supra,* 156 Cal.App.4th at pages 42-43, the court citing well-established binding authority,[6] explained: "[T]he injunction properly encompassed nonparties who were active members of Colonia Chiques or who acted in concert with the gang. 'Ordinarily only the parties to an action and their successors are bound by a judgment given in an action *inter partes*. In matters of injunction, however, it has been a common practice to make the injunction run also to classes of persons through whom the enjoined party may act, such as agents, servants, employees, aiders, abettors, etc., though not parties to the action, and this practice has always been upheld by the courts, and any of such parties violating its terms with notice thereof are held guilty of contempt for disobedience of the judgment. But the whole effect of this is simply to make the injunction effectual against all through whom the *enjoined party* may act, and to prevent the prohibited action by persons acting in concert

---

[5]     We affirm the judgment despite the Attorney General's inadequate brief and not because of it. In response to Pedro's claim, the Attorney General merely states Abdelmuti testified Pedro was an active participant in Varrio Chico at the time of the offenses and the testimony of one witness is sufficient to affirm a judgment. In the future, the Attorney General's office would be more effective if it provided a reasoned discussion how the evidence presented supports the required elements of the crime.

[6]     *In re Lennon* (1897) 166 U.S. 548, and *Berger v. Superior Court of Sacramento County* (1917) 175 Cal. 719.

9

with or in support of the claim of the *enjoined party*, who are in fact his aiders and abettors.' [Citations.]" In rejecting appellants' claim the injunction improperly "enjoins non-parties without evidence or findings that the non-party has engaged in nuisance-related misconduct," the court noted appellants did not dispute the criminal street gang "engaged in nuisance-related misconduct." (*Id.* at p. 43.) The court concluded it was "proper for the trial court to enjoin nonparties who were active members of the gang or who were acting in concert with it." (*Ibid.*)

There is no dispute Abdelmuti personally served Pedro and his mother with a copy of the Injunction and Pedro had notice and knowledge of the Injunction and what was prohibited. There is nothing in the record to suggest that Pedro was not afforded due process when both petitions were filed against him. Because Pedro was personally served with the gang injunction, and therefore had actual knowledge of the gang injunction, and could contest its application to him, nothing more was required.

Finally, Pedro relies on *Mathews v. Eldridge* (1976) 424 U.S. 319, to argue he was entitled to a hearing because the Injunction deprived him of his liberty based on a threatened violation of his First Amendment rights. In *Mathews*, the issue was "what process is due prior to [an] initial termination of [social security] benefits, pending review." (*Id.* at p. 333.) *Mathews* is inapt because it involved an alleged due process violation upon a preliminary infringement of a constitutional interest in property.

As discussed above, application of the Injunction did not deprive Pedro of a liberty interest. As the court stated in *Iraheta v. Superior Court* (1999) 70 Cal.App.4th 1500, 1511, "[I]t cannot be said that petitioners' interests in continuing to engage in conduct which constitutes a public nuisance is "'a compelling one, ranked among the most basic of civil rights . . . ." [Citations.]' [Citation.]" Thus, the Injunction did not infringe Pedro's federal and state constitutional rights.

10

DISPOSITION

The judgment is affirmed.


                                        O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


IKOLA, J.

11