[No. E010996. Fourth Dist., Div. Two. June 9, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
$30,000 UNITED STATES CURRENCY, Defendant;
RODNEY BECK, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, IV, V, and VI.

## COUNSEL

Reid & Hellyer, Michael J. Gilligan and Michael A. Markel for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Jeffrey J. Koch, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**DABNEY, J.**—Rodney Beck (defendant) appeals from a judgment ordering the forfeiture to the People of $30,000 in United States currency seized from a vehicle located in the backyard of defendant's house during a search for suspected marijuana.

On appeal, defendant contends (1) he was entitled to appointed counsel, and the court's failure to appoint counsel requires reversal of the judgment; (2) the trial court erred in failing to relieve him from his waiver of a jury trial; (3) the evidence was insufficient to support the judgment; and (4) the trial court erred by failing to exclude evidence seized through a violation of his Fourth Amendment rights.

The People contend that the $30,000 has already been disbursed, and this court is therefore deprived of jurisdiction to hear the appeal.

FACTS

On September 24, 1990, officers from the Fontana Police Department seized $30,000 in United States currency from a vehicle on defendant's property while executing a search warrant at defendant's house to investigate a possible violation of Health and Safety Code sections 11359 (possession of marijuana for sale) and 11378 (possession of certain controlled substances other than narcotics.)[1]

On October 16, 1990, the People filed a civil complaint for forfeiture of the $30,000 under Health and Safety Code section 11488.4. In the complaint, the People alleged that the currency was "possessed, acquired, used and intended for use as a result of and for the purpose of drug transactions." On October 19, 1990, defendant and Brian Beck,[2] acting in propria persona filed a claim opposing the forfeiture. They claimed they were the owners of the $30,000 and they lived at the house where the currency was seized. On November 16, 1990, Carla Knox,[3] acting in propria persona, filed a claim opposing the forfeiture. Knox claimed she was the owner of the $30,000, and she lived at the house where the currency was seized.

On May 1, 1991, claimant filed an answer in propria persona to the complaint for forfeiture. In the answer, defendant denied the currency had been possessed, acquired, used and intended for use as a result of and for the purpose of drug transactions. He alleged as affirmative defenses that (1) the People lacked probable cause to seize the currency; (2) he had been denied due process because the currency had been taken without a hearing or an opportunity to be heard regarding its seizure; (3) the People had violated his Fourth Amendment rights in conducting the seizure; and (4) the seizure and any forfeiture would constitute a violation of the Eighth Amendment rights against cruel and unusual punishment.

---

[1] In criminal proceedings resulting from the search, claimant was convicted of cultivation of marijuana.

[2] Default judgment was obtained against Brian Beck, and he is not a party to this appeal.

[3] Carla Knox is not a party to this appeal.

On May 1, 1990, Knox filed an answer making the same allegations and raising the same affirmative defenses. On November 14, 1991, the People filed an at-issue memorandum and stated that no jury was desired. On December 4, 1991, notice that a short cause trial had been set for January 8, 1992, was filed and served by mail on defendant.

On December 23, 1991, Knox filed an application for waiver of jury fees and expenses. On December 31, 1991, an order denying Knox's application for a waiver of jury fees and expenses was filed.

On December 31, 1991, the court filed an order denying defendant's application for waiver of jury fees and expenses.[4] The order stated that "matter is set for short cause which does not require jury."

On January 8, 1992, the court conducted a trial. Before the first witness was called, defendant requested a jury trial. The court noted that the request was untimely, and jury fees had not been paid. Thus, the court denied the request.

After detailing his training and experience in drug interdictions, Officer Hayhurst of the Fontana Police Department testified that on September 24, 1990, he had assisted in serving a search warrant at defendant's house. Defendant had a greenhouse in the backyard which was found to contain 95 marijuana plants ranging in size from 6 feet to 10 feet high. The plants were estimated to weigh 60 to 100 pounds. In the garage, the officers found laboratory equipment that, in Hayhurst's opinion, was being used for the clandestine manufacture of methamphetamine. Inside the house, the officers found some methamphetamine and nine baggies, each containing one ounce of marijuana. In Hayhurst's opinion, the methamphetamine and marijuana were possessed for sale.

Hayhurst also saw a Volkswagen in the backyard. The Volkswagen did not appear to have been operated for several years, and it was being used as a storage place. Inside the spare tire, Hayhurst recovered two ounces of methamphetamine and $29,000. The currency was all in $100 bills, stapled together in stacks of $1,000. The stacks were divided into three rolls, each secured with a rubber band. The currency was wet, moldy, and mildewed. An additional stack of ten $100 bills stapled together was found in the pants pocket of claimant's nephew. That money was similarly moldy and mildewed.

In Hayhurst's opinion, the $30,000 related to the sale of narcotics. The opinion was based on (1) Hayhurst's training and experience; (2) Hayhurst's

---

[4]The application is not included in the record in appeal.

observation of similarly stacked money possessed by other narcotics traffickers; (3) the fact that the money was all in $100 bills; (4) the quantity of methamphetamine and marijuana present at claimant's residence; and (5) the fact that the currency was found next to the methamphetamine.

In cross-examining Hayhurst, defendant asked the officer if he had ever obtained a search warrant for the Volkswagen. The question was objected to as irrelevant on the ground it was a matter for a motion under Penal Code section 1538.5, and such a motion had been made and denied in the criminal trial arising from the same search and seizure. The court sustained the objection.

Knox testified that the money represented hers and defendant's savings over a period of 11 years. The money was wet and moldy because it had been buried a long time. They had dug it up because they planned to open a motorcycle repair shop.

Knox testified that she and defendant were making $3,000 per month from repairing motorcycles in his garage. She was also collecting unemployment. She did not have records to demonstrate an income of $3,000, because most of the work was performed for friends.

She conceded on cross-examination she had filled out an application for waiver of court costs and fees in which she had stated under penalty of perjury that her income was $532 per month. She explained that the $532 represented her income from unemployment. The $3,000 per month was actually earned by defendant, and she did the bookkeeping for him. She saved most of her unemployment check because defendant's earnings paid their expenses. She asked for $100 bills when she cashed her unemployment checks, and then she and defendant buried the currency in the ground. For three years, defendant had been on disability, and the insurance company had made their house payments, so they were able to save more money.

Defendant testified he had received a settlement check for $9,000 when he went on disability. He offered into evidence various papers, including W-2 forms, vacation check stubs, and union papers. He represented to the court that the papers documented earnings of $300,000 over the last 10 years for him and Knox. He added, "[T]o save 10% out of that I don't find it would be hard to do."

The court stated, "I'll accept the summary. These are voluminous records. Under the Evidence Code, I would accept your oral summary of the contents of those records subject to cross-examination."

On cross-examination, defendant stated he earned $3,000 per month from his motorcycle repairs. However, he had no documentation to prove that income; much of his work was done for cash. His expenses included a house payment of $350 per month and utility payments.

He saved money in $100 bills because they were more compact, and he stapled the bills together in packets of $1,000 because they were easier to count. He buried the money in a piece of four-inch polyvinyl chloride (PVC) with caps on both ends. He left the money buried and dug it up only to add more money. The day of the search, he had given $1,000 to his nephew, Brian Beck, because Brian was in some trouble and defendant wanted to help him out. That morning, defendant had dug up the container of money and moved it into the Volkswagen. He was trying to dry it out. He had removed it from the PVC container because it was moldy and smelled bad. He stated that the money was in three different states of decay: one bundle was old, another was fairly old, and the third was fairly new.

He did not know anything about the methamphetamine seized from the Volkswagen. Four or five other people had access to the house.

Following the presentation of evidence, the court orally announced its decision that the $30,000 be forfeited. On January 13, 1992, a judgment of forfeiture was filed, forfeiting the $30,000 to the People. A copy of the judgment was served by mail on defendant on January 17, 1992.

On February 5, 1992, defendant obtained counsel and filed a substitution of attorneys naming his new counsel in place of himself in propria persona. On February 4, 1992, defendant's attorneys filed an amended notice of intent to move for a new trial. The grounds for the motion were that (1) defendant was improperly denied his right to jury trial; (2) defendant was improperly denied his right to appointed counsel; (3) the evidence was insufficient to support the judgment: (4) an error of law occurred at trial; and (5) the judgment was obtained by accident or surprise.

To support the motion, defendant filed a declaration in which he explained his procedural efforts to obtain a jury trial. He also noted that on January 8, 1992, the court had denied his request for appointed counsel. The People opposed the motion, and the court denied the motion on March 12, 1992.

Defendant filed his notice of appeal on April 13, 1992.

DISCUSSION

I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

III

*Right to Appointed Counsel*

██ Defendant argues he was indigent and was therefore entitled to appointed counsel, and the court's failure to appoint counsel for him requires reversal of the judgment.[5] The People respond that defendant did not request appointed counsel in the trial court, and the issue has therefore been waived for appeal. However, in their opposition to defendant's motion for new trial, the People conceded that defendant had requested appointment of counsel when the matter was called for trial on January 8, 1992. Our review of the record indicates defendant passingly referred to his desire for counsel at the hearing on January 8. We assume for sake of argument that this was sufficient to preserve the issue for appeal (see *Guardianship of Ethan S.* (1990) 221 Cal.App.3d 1403, 1412 [271 Cal.Rptr. 121]); however, we determine he had no right to appointed counsel in any event.

As a general rule, ". . . there is no due process right to counsel in civil cases. (*White* v. *Board of Medical Quality Assurance* (1982) 128 Cal.App.3d 699, 707 [180 Cal.Rptr. 516] [civil disciplinary action against medical licensee].) Generally speaking, the right to counsel has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation. (*Lassiter* v. *Department of Social Services* (1980) 452 U.S. 18, 25 [68 L.Ed.2d 640, 648[,] 101 S.Ct. 2153]; *Salas* v. *Cortez* (1979) 24 Cal.3d 22, 34 [154 Cal.Rptr. 529, 593 P.2d 226] [indigent defendants in paternity actions brought by the district attorney, subject to possible deprivation of liberty, have right to counsel].)" (*Walker* v. *State Bar* (1989) 49 Cal.3d 1107, 1116 [264 Cal.Rptr. 825, 783 P.2d 184].)

As noted above, in California, Health and Safety Code section 11470 et seq. forfeiture proceedings are considered to be civil, in rem proceedings. (*People* v. *25651 Minoa Drive* (1992) 2 Cal.App.4th 787, 796 [3 Cal.Rptr.2d 577].) A defendant is a voluntary participant in a forfeiture proceeding. (See

---

*See footnote, *ante*, page 936.

[5]Although the People do not address the issue, we note that at the hearing, defendant testified under penalty of perjury he had earnings of $3,000 per month from his motorcycle repair business. Thus, his claim of indigence appears to be disingenuous, to say the least.

*Doe* v. *Superior Court* (*Polanski*) (1990) 222 Cal.App.3d 1406, 1409, fn. 3 [272 Cal.Rptr. 474].)

Although no California court has addressed the issue, most courts to have considered the issue in other jurisdictions have concluded that an indigent party to a civil forfeiture proceeding does not have the right to appointed counsel. (See *U.S.* v. *Forfeiture, Property, All Appurtenances* (N.D.Tex. 1992) 803 F.Supp. 1194, 1196-1198; *U.S.* v. *One Parcel of Property* (N.D.Iowa 1991) 786 F.Supp. 1497, 1511; *Morgenthau* v. *Garcia* (1990) 148 Misc.2d 900 [561 N.Y.S.2d 867]; *Resek* v. *State* (Alaska 1985) 706 P.2d 288, 290-293; *United States* v. *One Parcel of Land* (D.C.Ill. 1985) 614 F.Supp. 183; but see *Com.* v. *$9,847.00 U.S. Currency* (1994) 161 Pa.Commw. 548 [637 A.2d 736], app. granted (1995) 655 A.2d 993.)

Defendant acknowledges the general rule that a party in a civil proceeding is not entitled to appointed counsel. However, he argues that his case falls under the exception to that general rule set forth in *Salas* v. *Cortez* (1979) 24 Cal.3d 22 [154 Cal.Rptr. 529, 593 P.2d 226]. In that case, the court held that indigent defendants in paternity proceedings prosecuted by the state were constitutionally entitled to appointed counsel. The court stated that when determining whether due process requires the appointment of counsel in a particular case, the court "must examine the nature and magnitude of the interests involved, the possible consequences appellants face and the features which distinguish [the present] proceedings from other civil proceedings. These factors must then be balanced against the state's interests." (*Id.* at p. 27.)

In *Salas*, the appellant faced the following consequences: a declaration of the existence of the biological relationship between parent and child; possible disruption of an established family; possible damage to reputation; the obligation to support and educate a child that may be enforced through garnishment or civil contempt, and which is nondischargeable in bankruptcy; and possible criminal proceedings for failure to support a child. (*Salas* v. *Cortez, supra*, 24 Cal.3d at pp. 27-28.) However, the state's interest was "largely financial." (*Id.* at p. 33.)

Courts have extended *Salas* in only limited circumstances. In *County of Ventura* v. *Tillett* (1982) 133 Cal.App.3d 105 [183 Cal.Rptr. 741], disapproved on another ground in *County of Los Angeles* v. *Soto* (1984) 35 Cal.3d 483, 492, fn. 4 [198 Cal.Rptr. 779, 674 P.2d 750], the court extended the *Salas* right to counsel to an indigent parent who had stipulated to a judgment for child support and reimbursement of welfare funds under Welfare and

Institutions Code section 11350. The court ruled the judgment could be set aside because it potentially could lead to incarceration, and the parent had been denied appointed counsel.

In *County of Orange* v. *Dabbs* (1994) 29 Cal.App.4th 999 [35 Cal.Rptr.2d 79], the court extended the *Salas* right to counsel in an appeal from judgment in an action brought by the district attorney for reimbursement of child support. The court noted, "Although *Tillett* is distinguishable because a support order has the potential for incarceration, while a reimbursement order does not [citation] . . . , we nonetheless conclude that where the state has appealed and brought its resources to bear against a responding indigent parent, counsel should be appointed. Even if he cannot be jailed, Dabbs faces a significant monetary claim. Under the circumstances of this particular case, appointed counsel is necessary to assure a 'level playing field.' [Citation.] This is particularly so in the unique situation where the state has elected to represent one private citizen against another. Any other conclusion would, ironically, turn this court into an advocate for the indigent party in a sense; for we would be required to research and marshal the arguments on his side of the retroactivity issue." (*Dabbs, supra*, 29 Cal.App.4th at p. 1004.)

However, in *Chevalier* v. *Dubin* (1980) 104 Cal.App.3d 975 [164 Cal.Rptr. 118], the court declined to appoint counsel in a case in which punitive damages were sought. The court explained that unlike a paternity case, as in *Salas*, a civil case seeking punitive damages does not involve state participation or a substantial state interest. (*Id.* at p. 979.)

Defendant argues that his case is more like *Salas* than like *Chevalier* in that the case involves both substantial state participation and a substantial state interest.

Although the state's motivation in forfeiture proceedings is to deter illegal drug transactions by stripping drug dealers of the tools and profits of their trade (*People* v. *Superior Court (Clements)* (1988) 200 Cal.App.3d 491, 499 [246 Cal.Rptr. 122]), the state's interest is primarily financial. Unlike the situation in *Salas*, in which the defendant faced incarceration and other serious consequences from an adverse judgment, here, defendant's interest also is merely financial. Thus, we decline to extend the right to counsel to an in rem forfeiture proceeding.

IV-VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and McDaniel, J.,† concurred.

---

*See footnote, *ante*, page 936.

†Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.