[No. A103446. First Dist., Div. Two. Nov. 29, 2004.]

JOHN BABA, et al., Plaintiffs and Respondents, v.
BOARD OF SUPERVISORS OF THE CITY & COUNTY OF SAN
FRANCISCO, et al., Defendants and Appellants.

508

### COUNSEL

Dennis J. Herrera, City Attorney, Wayne K. Snodgrass, K. Scott Dickey and Sherri Sokeland Kaiser, Deputy City Attorneys, for Defendants and Appellants.

Wiegel & Fried, Andrew J. Wiegel and Clifford E. Fried for Plaintiffs and Respondents.

### OPINION

### HAERLE, J.—

## I. INTRODUCTION

The superior court issued a writ of mandamus barring enforcement of two provisions of the San Francisco Residential Rent Stabilization and Arbitration Ordinance. (S. F. Admin. Code, ch. 37 (hereafter, the Rent Ordinance).)[1] The superior court found that section 37.10A(c) and section 37.10A(g) of the Rent Ordinance are unconstitutional on their face. We affirm.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. *The Rent Ordinance and the Daly Amendments*

The Rent Ordinance was adopted in June 1979 in order to address problems created by a shortage of decent, safe and sanitary housing in the City and County of San Francisco. (§ 37.1.) The Ordinance addresses these problems by, among other things, imposing rent increase limitations for tenants in occupancy (§ 37.3) and limiting the grounds pursuant to which a landlord may lawfully recover or endeavor to recover possession of a residential rental unit from a tenant. (§ 37.9.)

One basis for a tenant's lawful eviction is so that the landlord or landlord's close relative may use the unit as his or her principal residence. (§ 37.9(a)(8).) This "owner move-in" provision of the Rent Ordinance is consistent with the state Ellis Act which provides that, with limited exceptions, a statute, ordinance or regulation may not "compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease . . . ." (Gov. Code, § 7060, subd. (a).) However,

---

[1] All undesignated statutory references are to the San Francisco Administrative Code unless otherwise indicated.

the Rent Ordinance also contains provisions designed to ensure that a landlord cannot avoid controls imposed by the Rent Ordinance by evicting a tenant, pursuant to the owner move-in provision and/or the Ellis Act, and then re-renting the unit to a new tenant who does not possess the protections under the Rent Ordinance that the original tenant could have claimed. (§ 37.9(a)(8).)

In August 2001, the San Francisco District Attorney's Office, which is charged with enforcing the Rent Ordinance, contacted San Francisco Supervisor Daly and shared concerns about problems the office encountered while investigating illegal evictions. For example, the district attorney's office was concerned by a practice it referred to as the "Ellis bluff" which it described as follows: "[A] landlord threatens, but never actually files, an Ellis Act eviction notice in order to recover a rental unit from a tenant. If the tenant vacates the unit, the landlord then receives the benefit of an Ellis eviction without any of the consequences, and can re-rent the unit at market rate." The office had also allegedly encountered cases in which tenants who were not represented by counsel had been subjected to owner move-in or Ellis Act evictions and had waived their rights under the Rent Ordinance, purported to release landlords from their obligations under the Ordinance and/or agreed not to cooperate with the district attorney or the Rent Board.

Supervisor Daly introduced proposed amendments to the Rent Ordinance intended to remedy the problems about which the district attorney's office had complained. On April 22, 2002, the San Francisco Board of Supervisors passed ordinance No. 57-02 which amended sections 37.9, 37.9B, and 37.10A of the Rent Ordinance. Ordinance No. 57-02 was approved by then Mayor Brown on May 2, 2002. (Ord. No. 57-02, File No. 011575.) Like the parties and other individuals involved in this case, we refer to amendments effectuated by this ordinance as the Daly Amendments. Several of the changes effectuated by the Daly Amendments were made to section 37.10A of the Rent Ordinance which is entitled "Misdemeanors and Other Enforcement Provisions."

For example, section 37.10A(c) now states: "It shall be unlawful for a landlord or for any person who willfully assists a landlord to request that a tenant move from a rental unit or to threaten to recover possession of a rental unit, either verbally or in writing, unless: [¶] (1) The landlord in good faith intends to recover said unit under one of the grounds enumerated in Section 37.9(a) or (b); and [¶] (2) Within five days of any such request or threat the landlord serves the tenant with a written notice stating the particular ground under Section 37.9(a) or (b) that is the basis for the landlord's intended recovery of possession of the unit."

Section 37.10A(g), which was also amended, states: "Except as provided in this subsection, it shall be unlawful for a landlord, or for any person who

willfully assists a landlord, including the landlord's attorney or legal representative, to seek or obtain a tenant's agreement not to cooperate with an investigation or proceeding by any administrative or law enforcement or other governmental agency under this Chapter, or to otherwise seek or obtain a tenant's waiver of rights under this Chapter. Any waiver of rights by a tenant under this Chapter shall be void as contrary to public policy unless the tenant is represented by independent counsel and the waiver is approved in a Court-supervised settlement agreement, or by a retired judge of the California Superior Court sitting as a mediator or arbitrator by mutual agreement of the tenant represented by independent counsel and the landlord. Any settlement agreement shall identify the judge, mediator, or arbitrator reviewing the settlement, all counsel representing the parties, and any other information as required by the Board. The landlord shall file a signed copy of the settlement agreement with the Board within ten days of execution. Unless otherwise required by the Board, the copy of the agreement filed with the Board shall redact the amount of payments to be made to tenants."

Another change effectuated by the Daly Amendments was the addition of section 37.10A(i) which states: "Any person who violates Section 37.10A(a), (b), (c), (d), (g) or (h) is guilty of a misdemeanor and shall be punished by a mandatory fine of one thousand dollars ($1,000), and in addition to such fine may be punished by imprisonment in the County Jail for a period of not more than six months. Each violation shall constitute a separate offense."

## B. *The Present Action*

On October 10, 2002, John Baba, Philip Brady, Sergio Iantorno, John Zanghi and Arnold W. Evje, II (respondents) filed an amended petition for administrative mandamus (the petition) and a complaint for declaratory and injunctive relief against the San Francisco Board of Supervisors, the Rent Stabilization and Arbitration Board and the City and County of San Francisco (appellants). According to the petition, Baba and Brady are residential tenants of property located in San Francisco, Iantorno is a San Francisco landlord, and Zanghi and Evje practice law in San Francisco. Together, they challenged several of the Daly Amendments, including section 37.10A(c) and 37.10A(g), on a variety of grounds.

The trial court issued an alternative writ on October 11, 2002, and set the matter for briefing and hearing. Thereafter, on April 7, 2003, the Honorable James J. McBride denied the petition in part, finding that some of the challenges advanced did not constitute controversies that were sufficiently ripe for judicial determination. However, the court granted the petition with respect to section 37.10A(c) and section 37.10A(g). It found that section 37.10A(c) is unconstitutional on its face because it criminalizes speech that is

protected by the First Amendment and by article 1, section 2 of the California Constitution and that it is also void for vagueness. The court also found that section 37.10A(g) is invalid because it violates "a person's fundamental right to represent himself or herself in a proceeding that may or may not ripen into a lawsuit." The court reasoned that a person has a fundamental right to appear in court in propria persona and that the right to represent oneself outside the courthouse is just as fundamental.

A writ of mandamus prohibiting appellants from enforcing section 37.10A(c) and section 37.10A(g) was issued on May 29, 2003. Appellants filed their timely notice of appeal on July 22, 2003.

## III. DISCUSSION

### A. *Standard of Review*

■ Respondents have advanced facial challenges to sections 37.10A(c) and 37.10A(g). "A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual. [Citation.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].)
■ We review de novo both the trial court's interpretation of the challenged provisions and the constitutional issues it resolved. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Herbst v. Swan* (2002) 102 Cal.App.4th 813, 816 [125 Cal.Rptr.2d 836].)

### B. *Section 37.10A(c)*

Appellants challenge the trial court's findings that section 37.10A(c) violates free speech guarantees and is vague. They contend that the speech which is regulated by this provision falls outside the protection of the First Amendment and that it is not vague because its language is "easily understood with resort to simple common sense." Because we agree with the trial court that the provision suppresses constitutionally protected speech, we need not address the void for vagueness doctrine.

#### 1. *Governing principles and issues presented*

■ The First Amendment of the United States Constitution provides in part that "Congress shall make no law . . . abridging the freedom of speech . . . ." "Although by its terms this provision limits only Congress, the United States Supreme Court has held that the Fourteenth Amendment's due process clause makes the freedom of speech provision operate to

limit the authority of state and local governments as well. [Citation.]" (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 951 [119 Cal.Rptr.2d 296, 45 P.3d 243] (*Kasky*).) Article 1, section 2, subdivision (a) of the California Constitution states: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." ▇ "The state Constitution's free speech provision is 'at least as broad' as [citation] and in some ways is broader than [citations] the comparable provision of the federal Constitution's First Amendment." (*Kasky, supra,* 27 Cal.4th at pp. 958–959; see *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 490 [101 Cal.Rptr.2d 470, 12 P.3d 720] (*Gerawan I*).) Therefore, if section 37.10A(c) violates the First Amendment, it also offends our state Constitution.

▇ " 'As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based.' [Citation.]" (*People v. Hsu* (2000) 82 Cal.App.4th 976, 986 [99 Cal.Rptr.2d 184].) Section 37.10A(c) is a content-based regulation; it criminalizes communications made by or on behalf of a landlord based on the content of the communication. "A content-based regulation is presumably invalid. [Citation.] It may be upheld only upon a showing that it is necessary to serve a compelling state interest and has been narrowly tailored to serve that end." (*People v. Hsu, supra,* at p. 986.)

Appellants have never attempted to show that section 37.10A(c) is a permissible content-based regulation which satisfies the test we have just quoted. In the lower court, appellants took the position that respondents failed to carry their burden of proving this ordinance is unquestionably unconstitutional. On appeal, respondents assert a new argument. They contend, for the first time on appeal, that this provision is constitutional because it penalizes false and misleading commercial speech which is not constitutionally protected at all.

▇ " '[T]he [federal] Constitution accords less protection to commercial speech than to other constitutionally safeguarded forms of expression.' (*Bolger v. Youngs Drug Products Corp.* (1983) 463 U.S. 60, 64–65 [77 L.Ed.2d 469, 103 S.Ct. 2875] (*Bolger*).)" (*Kasky, supra,* 27 Cal.4th at p. 952.) Because regulation of commercial speech based on content is viewed as "less problematic" (*Bolger, supra,* 463 U.S. at p. 65 than a content-based regulation of noncommercial speech, the United States Supreme Court crafted an intermediate-scrutiny test for determining the validity of a content-based regulation of commercial speech. That test is: "For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental

interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." (*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York* (1980) 447 U.S. 557, 566 [65 L.Ed.2d 341, 100 S.Ct. 2343] (*Central Hudson*); see also *Kasky, supra*, 27 Cal.4th at p. 952; *Gerawan Farming, Inc. v. Kawamura* (2004) 33 Cal.4th 1, 22 [14 Cal.Rptr.3d 14, 90 P.3d 1179] (*Gerawan II*).)

■ Appellants rely exclusively on the first prong of this so-called *Central Hudson* test which reflects the well-settled rule that "commercial speech that is false or misleading is not entitled to First Amendment protection and 'may be prohibited entirely.' [Citations.]" (*Kasky, supra,* 27 Cal.4th at p. 953.) But appellants overlook one aspect of this rule which is noteworthy here. "With regard to misleading commercial speech, the United States Supreme Court has drawn a distinction between, on the one hand, speech that is actually or inherently misleading, and, on the other hand, speech that is only potentially misleading. Actually or inherently misleading commercial speech is treated the same as false commercial speech, which the state may prohibit entirely. [Citations.] By comparison, '[s]tates may not completely ban potentially misleading speech if narrower limitations can ensure that the information is presented in a nonmisleading manner.' [Citations.]" (*Id.* at p. 953.)

Therefore, in order to accept appellants' claim that the speech suppressed by section 37.10A(c) is not constitutionally protected at all, we would have to find that this provision embraces only (1) commercial speech which is (2) false or inherently misleading. If appellants are wrong on either count, the First Amendment is implicated and we must consider whether the regulation's infringement on the constitutional right to freedom of speech is justified.

### 2. *Section 37.10A(c) regulates constitutionally protected speech*

#### a. *Commercial speech*

■ " 'Commercial speech,' at its core, is speech that does 'no more than propose a commercial transaction' [citation], and, more broadly, is speech that goes beyond proposing such a transaction but yet 'relate[s] solely to the economic interests of the speaker and its audience' [citations]." (*Gerawan I, supra*, 24 Cal.4th at p. 486.) Commercial speech has been distinguished from " 'political speech' [which] is speech that deals with ' "governmental affairs" ' [citation], and 'ideological speech' [citation] [which] is speech that apparently concerns itself with 'philosophical,' 'social,' 'artistic,' 'economic,' 'literary,' 'ethical,' and similar matters [citation]." (*Ibid.*)

Section 37.10A(c) is not directed at "core" commercial speech; it does not regulate speech that does no more than propose a commercial transaction.

Moreover, we find the speech that is regulated by this provision does not relate solely to the economic interests of the speaker and/or his or her audience. Section 37.10A(c) penalizes specified types of speech by a landlord regardless of whether that speech is motivated by economic considerations. It also applies to speech by one who "willfully assists a landlord." A speaker who willfully assists a landlord in this context may not have any economic interest in the matter at issue at all. Further, this statute punishes a "threat[] to recover possession of a rental unit" regardless of the basis for that threat. And it applies even more broadly to any "request that a tenant move from a rental unit." Any such threat or request subjects the speaker to criminal liability unless the landlord has the present intent to institute formal eviction proceedings against his or her tenant pursuant to section 37.9(a) or (b) and acts on that intent within five days. (§ 37.10A(c)(1) & (2).) Neither this broadly worded provision nor the penalty it imposes contains any language limiting its reach to speech that is motivated by or even related to the economic interests of the parties.

A few examples illustrate our point. During the course of a heated argument over a current political issue, an angry landlord "requests" that her tenant move out but does not have any present intent to evict him or her. That landlord violates the express terms of section 37.10A(c) and is subject to criminal prosecution. (§ 37.10A(i).) A forgiving landlord who feels an obligation to the tenant beyond that required by the Rent Ordinance threatens to evict that tenant in the future unless the tenant remedies his or her prior breach of the Rent Ordinance or refrains from committing future breaches. Under these circumstances, the landlord has violated section 37.10A(c) because he does not have the present intent to institute a formal eviction. Although, in these examples, the economic interests of the parties may be implicated, the speech which is penalized is not motivated by or even related to the economic interests of the parties.

Some of the speech prohibited by this provision could be construed as commercial speech. For example, a landlord who requests that a tenant vacate a rental unit in exchange for a cash payment would violate this regulation to the extent he or she does not have the present intent to evict the tenant pursuant to a ground set forth in section 37.9(a) or (b) of the Rent Ordinance. However, such speech is suppressed *not* because this provision regulates commercial speech but rather because it applies to broad categories of speech *regardless* of their commercial nature. Absent any language limiting the reach of this provision to commercial speech we cannot reasonably interpret it as containing such a limitation.

Appellants contend that a test recently articulated by our Supreme Court in *Kasky, supra*, 27 Cal.4th at page 960, establishes that section 37.10A(c) is properly viewed as a commercial speech regulation.

In *Kasky*, the court held that statements allegedly made by defendant Nike about its labor practices and working conditions in its factories constituted commercial speech subject to regulation under the state's false advertising and unfair competition laws. In reaching that decision, the *Kasky* court acknowledged that there is no "all-purpose test" to distinguish commercial from noncommercial speech under the federal or state Constitution and it expressly declined to propose any such test. Instead, the court formulated the following "limited-purpose test": "[W]*hen a court must decide whether particular speech may be subjected to laws aimed at preventing false advertising or other forms of commercial deception* categorizing a particular statement as commercial or noncommercial speech requires consideration of three elements: the speaker, the intended audience, and the content of the message." (*Kasky, supra*, 27 Cal.4th at p. 960.) Applying this test, the *Kasky* court found that the statements at issue in that case were commercial speech because "Nike was acting as a commercial speaker, because its intended audience was primarily the buyers of its products, and because the statements consisted of factual representations about its own operations." (*Id.* at p. 964.)

*Kasky* does not assist appellants for several reasons. First, the *Kasky* test is a "limited-purpose test." It applies when the issue to be decided is "*whether particular speech may be subjected to laws aimed at preventing false advertising or other forms of commercial deception . . .*" (*Kasky, supra*, 27 Cal.4th at p. 960.) The present case presents no such issue; here we must determine whether a *particular law* violates free speech guarantees. Beyond that, the law at issue here is a provision of a local rent control ordinance and does not have anything to do with false or misleading advertising which was the subject of *Kasky*.

Indeed, *Kasky* appears to undermine appellants' position in this case to the extent the court there recognized that all of the United States Supreme Court's commercial speech decisions have "involved statements about a product or service, or about the operations or qualifications of the person offering the product or service." (*Kasky, supra*, 27 Cal.4th at p. 961.) The landlord-tenant relationship, though it surely has a commercial component, is more complex, personal and permanent than the relationship between the seller of goods or services and his or her potential buyer. We simply are not comfortable manipulating the *Kasky* test to fit this very different situation.

■ Finally, to the extent the *Kasky* test can and should be adapted to fit this context, it does not support appellants' claim that section 37.10A(c) is purely a commercial speech regulation. As noted, the *Kasky* test requires consideration of the speaker, the intended audience and the content of the message. (*Kasky, supra*, 27 Cal.4th at p. 960.) This test helps to identify common characteristics of commercial speech which include: (1) a speaker

who is engaged in commerce; (2) an audience of persons who may be influenced by the speech to engage in a commercial transaction with the speaker or the person on whose behalf the speaker is acting; and (3) a message which is commercial in character such as a representation of fact about the speakers business operations, products or services. (*Kasky, supra,* 27 Cal.4th at pp. 960–961.)

Appellants contend that the speech subject to section 37.10A(c) has these commercial speech characteristics because "[t]he landlord is a commercial speaker, the tenant is a consumer of the landlord's services, and the eviction threat asserts a fact—the present intent to evict—about the landlord's business operations that the landlord can verify but the tenant cannot." To the contrary, and as already noted, section 37.10A(c) applies regardless of whether the landlord is acting as a commercial speaker and it also applies to individuals who willfully assist landlords and may have no commercial relationship with the tenant at all. Furthermore, section 37.10A(c) does not regulate factual representations about the landlord's business; it applies to any threat to evict and any request that a tenant vacate a unit regardless of the basis for the threat or request or of the context in which it is made. Thus, *Kasky* does not alter our conclusion that section 37.10A(c) is not purely a commercial speech regulation.

b. *False or inherently misleading speech*

As noted above, the First Amendment protects commercial speech which is not false or inherently misleading. Thus, to the extent that section 37.10A(c) can properly be analyzed as a commercial speech regulation, the First Amendment affords some level of protection against governmental suppression of commercial speech unless this provision regulates *only* false or inherently misleading speech.

Appellants contend that section 37.10A(c) punishes only two specific types of speech: (1) insincere threats of legal evictions and (2) sincere threats of illegal evictions. Appellants further contend that, by limiting its scope to these two categories of speech, section 37.10A(c) only penalizes speech which is false or misleading. We simply cannot accept appellants' strained interpretation of this regulation.

Section 37.10A(c) expressly applies *both* to threats to recover possession of a rental unit and requests that a tenant move from a rental unit. Appellants not only ignore this broad language, they also read into this section "sincerity" limitations that simply are not there. They move even further from solid ground by arguing that these illusory sincerity limitations somehow ensure that only false and misleading speech will be suppressed by this regulation.

By definition, a threat refers to some future action and the absence óf a present intent to immediately act on that threat does not render it either false or inherently misleading. By the same token, the sole fact that a landlord does not presently intend to force a tenant to vacate a unit obviously does not render that landlord's request that he or she do so either false or misleading.

Again, a few examples help illustrate our point. A landlord who requests that a tenant move out but also expressly acknowledges that the tenant has a legal right to stay has not made a false or misleading statement. However, if that landlord does not have the present intent to evict the tenant, he or she has violated section 37.10A(c) and is subject to criminal prosecution. Further-more, a landlord's threat that he or she will evict a tenant *if or when* a proper ground for eviction arises is neither false nor misleading. However, a landlord who makes such a threat violates the express language of section 37.10A(c) and is subject to criminal prosecution because he or she has threatened eviction without having the present intent to evict.

Thus, we reject appellants' contention that the speech regulated under section 37.10A(c) is not protected by the Constitution for two reasons. First, even if the commercial speech doctrine applies to communications between a landlord or his agent and a tenant, section 37.10A(c) necessarily regulates both commercial and noncommercial speech. Second, this provision also regulates speech which is neither false nor inherently misleading. Therefore, contrary to appellants' position in this court, section 37.10A(c) suppresses speech which *is* protected by the First Amendment.

### 3. *The suppression of protected speech has not been justified*

The trial court found that "[t]he harm that the City seeks to redress with this statute cannot justify the infringement on the right of free speech guaranteed by the First Amendment and by Article 1 & 2 of the California Constitution." Appellants ignore this finding because, as already noted, their limited defense of section 37.10A(c) is premised on the erroneous notion that the speech subject to this provision is not constitutionally protected at all. Thus they do not even attempt to justify the impingement on free speech rights. On this record, we agree with the trial court that the suppression of constitutionally protected speech cannot be justified.

We focus our analysis on the remaining prongs of the *Central Hudson* test applicable to commercial speech because, if section 37.10A(c) cannot satisfy this intermediate-scrutiny test, it necessarily fails under a strict scrutiny analysis. The second prong of the *Central Hudson* test requires that the government assert an interest that is substantial. (*Central Hudson, supra,* 447 U.S at p. 566.) To satisfy the final two prongs of *Central Hudson,* the

challenged regulation must directly advance the asserted substantial interest and must be no more extensive than necessary to serve that interest. (*Ibid.*)

The record before us contains very little evidence relating to any of these considerations. The only evidence appellants offered in the trial court was a declaration by Assistant District Attorney Brian Bringardner and a transcript of a public hearing conducted by a committee of the San Francisco Board of Supervisors prior to the adoption of the Daly Amendments.

Bringardner is responsible for prosecuting illegal rent increase and illegal eviction cases that rise to the level of a criminal offense. In his declaration, Bringardner stated: "[I]t came to my attention that some landlords were removing tenants from rent controlled units by buying out and/or threatening the tenants of such units in order to create vacancies that would allow them to raise the rent to market level. This included threatening tenants that if they did not 'voluntarily' vacate their rent controlled units, either with or without a financial payment by the landlord, they would be subjected to either an owner move-in or Ellis Act eviction. In some cases, tenants were further threatened that this would damage their credit record and make it very difficult for them to find replacement housing. It quickly became apparent that tenants without counsel were especially vulnerable to this sort of pressure, even where the facts and the law were on their side. . . ."

At the public hearing, Bringardner spoke about the purpose and need for the various amendments but he *did not* specifically address section 37.10A(c) or the problem of threats by landlords against their tenants. Further, in his concluding comment, Bringardner stated: ". . . I don't think it can be said enough that it is a very small minority of landlords who are doing this sort of thing but the effect they are having on their tenants is terrible. Most of these people end up having to leave San Francisco and we are losing some of our most talented people, some of whom have lived in this city for years and the face of this city is changing because of this. So, thank you very much."

Despite the meager record below, we have no trouble finding a substantial governmental interest in this case. Appellants have a substantial interest in preventing San Francisco landlords from evading regulation under the Rent Ordinance. However, the lack of evidence relating to the specific practice which allegedly implicates this important governmental interest certainly impacts the remainder of our *Central Hudson* analysis.

██ "The third step of *Central Hudson* concerns the relationship between the harm that underlies the State's interest and the means identified by the State to advance that interest. It requires that 'the speech restriction directly and materially advanc[e] the asserted governmental interest. "This burden is

not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." ' [Citations.]" (*Lorillard Tobacco Co. v. Reilly* (2001) 533 U.S. 525, 555 [150 L.Ed.2d 532, 121 S.Ct. 2404] (*Lorillard Tobacco*); see also *Gerawan II, supra*, 33 Cal.4th at p. 23.)

Here, appellants have not satisfied this third prong of the *Central Hudson* test. Notably absent from this record are any concrete data, studies or real-life examples of the harms the Daly Amendments were designed to address. Indeed, appellants have neglected to produce evidence of a single actual case in which a tenant vacated his or her unit pursuant to an owner move-in or Ellis Act "bluff."[2] This lack of evidence is particularly disconcerting in light of Bringardner's concession that "it is a very small number of landlords who are doing this sort of thing." Further, appellants have also failed to produce any evidence that the harm they seek to redress, landlord bluffing, would be materially alleviated by imposing the speech restrictions at issue here.

 Assuming appellants could fill this evidentiary void with respect to the third prong of *Central Hudson*, we would nevertheless find that section 37.10A(c) is invalid. "The last step of the *Central Hudson* analysis 'complements' the third step, 'asking whether the speech restriction is not more extensive than necessary to serve the interests that support it.' [Citation.]" (*Lorillard Tobacco, supra*, 533 U.S. at p. 556.) Although this is not a "least restrictive means" test, there must be a "reasonable ' "fit between the legislature's ends and the means chosen to accomplish those ends, . . . a means narrowly tailored to achieve the desired objective." ' [Citations.]" (*Ibid.*; see also *Gerawan II, supra*, 33 Cal.4th at p. 23.) As our analysis thus far demonstrates, section 37.10A(c) is more extensive than necessary and it is not narrowly tailored to serve the governmental interest in this case. If coerced "voluntary" eviction is the perceived harm, that is the conduct that should be penalized. Instead, this statute criminalizes a wide range of expressive First Amendment activity regardless of whether that activity causes the harm that appellants seek to prevent or, indeed, any harm at all.

 In summary, even if analyzed as a commercial speech regulation, section 37.10A(c) suppresses speech which is neither false nor inherently misleading. Appellants have not demonstrated that this provision directly advances a substantial governmental interest or that it is no more extensive

---

[2] At the committee hearing, several individuals, including tenants and representatives of tenant organizations, expressed their views that threats by landlords against tenants were a significant problem. But nobody at the hearing claimed to have vacated a rental unit because of a threat made by or on behalf of a landlord or identified any specific individual who had been victimized by such a practice.

than necessary to serve that interest. Therefore, we affirm the trial court's finding that section 37.10A(c) in unconstitutional.

## C. *Section 37.10A(g)*

### 1. *Background and appellants' contentions*

Section 37.10A(g) divides into two distinct parts. First, this provision imposes restrictions on a tenant's ability to waive his or her rights under the Rent Ordinance by providing that such a waiver is void as contrary to public policy unless (1) "the tenant is represented by independent counsel" and (2) "the waiver is approved" by a court or a retired judge sitting as a mediator or arbitrator. We refer to this aspect of section 37.10A(g) as the waiver restrictions. Second, section 37.10A(g) expressly criminalizes conduct by making it unlawful for a landlord, a landlord's attorney, legal representative, or an individual acting on behalf of a landlord to "seek or obtain" from a tenant either (1) an agreement not to cooperate with a government or agency investigation or proceeding conducted pursuant to the Rent Ordinance or (2) a waiver of rights under the Rent Ordinance, "[e]xcept as provided in this subsection." We refer to this aspect of the provision as the conduct restrictions.

Focusing on the waiver restrictions imposed by this provision, the trial court found that section 37.10A(g) violates a tenant's "fundamental" right to self-representation. Unquestionably, these restrictions preclude a tenant from representing him- or herself during the process pursuant to which a waiver of tenant rights can lawfully be accomplished. Further, these restrictions require that such a waiver be both conceived and approved in the context of an adversarial legal proceeding. Thus, these restrictions preclude the tenant from representing himself in a civil proceeding pursuant to which he may lawfully waive any or apparently all his rights under the Rent Ordinance. Appellants contend that this aspect of the provision is unremarkable because tenants have no right to self-representation in this context.[3]

To support their position, appellants rely on cases construing the Sixth Amendment right to personally present a defense. (See, e.g., *In re Barnett*

---

[3] Although they maintain there is no right to self-representation in a civil proceeding, appellants also argue that, even if such a right existed, it would not extend to the waivers governed by section 37.10A(g) because the "principal [*sic*]" that individuals may represent themselves should apply only to "legal proceedings" and should not be extended to "tenant contracting." For the sake of clarity, we reject this contention at the outset. Appellants have lost sight of the very language of the provision they attempt to defend. To comply with the waiver restrictions imposed by section 37.10A(g), tenants, landlords and their respective counsel are expressly required to negotiate their agreement in the context of an adversarial legal proceeding.

(2003) 31 Cal.4th 466, 473 [3 Cal.Rptr.3d 108, 73 P.3d 1106]; *People v. Williams* (2003) 110 Cal.App.4th 1577 [2 Cal.Rptr.3d 890].) These cases construe the Sixth Amendment as pertaining "strictly to the basic rights that an accused enjoys in defending against a criminal prosecution and does not extend beyond the point of conviction." (*In re Barnett, supra*, 31 Cal.4th at p 473.) Appellants' authority is relevant to the extent it supports the general proposition that there is no Sixth Amendment right to self-representation in a civil proceeding. (*People v. Williams, supra*, 110 Cal.App.4th at p. 1580.) However, appellants' truncated analysis does not resolve the issue presented here.

■ Appellants claim that section 37.10A(g) is valid because it does " 'not run afoul of some specific federal constitutional prohibition, or of some valid federal law.' " (Quoting *Ferguson v. Skrupa* (1963) 372 U.S. 726, 730–731 [10 L.Ed.2d 93, 83 S.Ct. 1028].) But section 37.10A(g) is not a state statute; it is a provision in a local ordinance. As such, this provision is expressly subject to the restrictions of article XI, section 7 of the California Constitution which states: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws*." (Italics added.) The effect of this constitutional provision is to preempt and void otherwise valid local legislation which conflicts with state law. (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534].) " 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' [Citations.]" (*Id.* at p. 897.)

Thus, the dispositive issue presented is whether the waiver restrictions conflict with the general law of this state by precluding a tenant from representing himself or herself in a proceeding pursuant to which he or she may waive her rights under the Rent Ordinance.[4]

### 2. *The right to self-representation in a civil proceeding*

■ At least by 1896, our Supreme Court recognized that a litigant has the right to represent him- or herself in a civil proceeding in this state. (*Philbrook v. Superior Court* (1896) 111 Cal. 31, 34 [43 P. 402] (*Philbrook*).) Since then, California courts have repeatedly and consistently acknowledged

---

[4] Appellants argue that, because the Rent Board has the power to "prohibit waiver of tenant rights under the Rent Ordinance altogether, it has the corollary power to place conditions on any waiver it does allow." We note only the two most obvious flaws in the logic of this assertion. First, we have not been asked to determine whether the Board has the power to prohibit waivers altogether. Second, assuming the Board has such power, it is not free to abuse that power by imposing conditions that violate the law.

this right. (See, e.g., *O'Connell v. Judnich* (1925) 71 Cal.App. 386, 388 [235 P. 664] (*O'Connell*); *Culley v. Cochran* (1930) 107 Cal.App. 525, 531 [290 P. 484]; *Gray v. Justice's Court* (1937) 18 Cal.App.2d 420, 423 [63 P.2d 1160]; *Paradise v. Nowlin* (1948) 86 Cal.App.2d 897, 898 [195 P.2d 867], questioned on other grounds in *CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1147 [16 Cal.Rptr.3d 555]; *Monastero v. Los Angeles Transit Co.* (1955) 131 Cal.App.2d 156, 160 [280 P.2d 187]; *Doran v. Dreyer* (1956) 143 Cal.App.2d 289, 290 [299 P.2d 661]; *People ex rel. Dept. of Public Works v. Malone* (1965) 232 Cal.App.2d 531, 537 [42 Cal.Rptr. 888]; *Abar v. Rogers* (1981) 124 Cal.App.3d 862, 864–865 [177 Cal.Rptr. 655]; *Harding v. Collazo* (1986) 177 Cal.App.3d 1044, 1055 [223 Cal.Rptr. 329]; *J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 965 [22 Cal.Rptr.2d 527]; *Drake v. Superior Court* (1994) 21 Cal.App.4th 1826, 1830 [26 Cal.Rptr.2d 829].)

This authority establishes a "general rule" that " 'any person may represent himself, and his own interests, at law and in legal proceedings . . . .' " (*J.W. v. Superior Court, supra*, 17 Cal.App.4th at p. 965.) The decisions make clear that self-representation is not just a privilege but also a right. As one court explained: "It will be observed that the privilege of practicing law is confined to appearing in behalf of others. The right of one to appear and conduct his own case is not affected. One is a privilege and the other is a right." (*Gray v. Justice's Court, supra*, 18 Cal.App.2d at p. 423.) Furthermore, it appears that the existence of such a right was never a subject of judicial dispute. (See, e.g., *Paradise v. Nowlin, supra*, 86 Cal.App.2d at p. 898 [noting that this general rule is "overwhelmingly sustained by the authorities."].)

Thus, it is undisputable that California recognizes a general right to represent oneself in a civil proceeding in California. However, we note that, in contrast to federal law, there is no California statute which expressly codifies this right.[5] We note this fact because it is unclear whether a local ordinance which conflicts with state decisional law rather than a state statute is invalid under article XI, section 7 of the California Constitution. (*Chavez v. Sargent* (1959) 52 Cal.2d 162, 177 [339 P.2d 801], disapproved on other grounds in *Petri Cleaners, Inc. v. Automotive Employees, etc.* (1960) 53 Cal.2d 455, 481–482 [2 Cal.Rptr. 470, 349 P.2d 76].) In other words, our Supreme Court has declined to decide whether the term "general laws" in this constitutional provision includes decisional law. (*Ibid.*)

If forced to decide this question, we would be strongly influenced by the fact that, in numerous other contexts, the Legislature has defined the term

---

[5] The right to represent oneself in a civil case in federal court is expressly conferred by statute. (28 U.S.C. § 1654; *O'Reilly v. New York Times* (1982) 692 F.2d 863, 867.) California has not enacted an analogous statute expressly conferring a right to self-representation in state civil proceedings.

"law" to expressly include decisional law. (See, e.g., Evid. Code, § 160; Gov. Code, § 811; Fam. Code, § 4901, subd (k); see also Code Civ. Proc., §§ 1895 & 1899.) However, we find it unnecessary to determine whether state judicial precedent will *always* prevail over a conflicting local ordinance. Instead, we hold that the unique characteristics of the right to self-representation in a civil proceeding establish that this right is indeed the general law of this state.

A closer look at the genesis of the right to self-representation in a civil proceeding reveals it has clear constitutional implications. As noted above, the earliest case we have found which acknowledges this right is *Philbrook, supra,* 111 Cal. 31. There, our Supreme Court reversed an order precluding a lawyer who had been suspended from practicing law from appearing in propria persona to prosecute a claim in court. The court reasoned that the judgment of suspension "did not, and did not attempt to limit petitioner in the exercise of any rights formerly enjoyed by him, saving those pertaining to the office of attorney at law." (*Id.* at p. 34.) Thus, the court held: "Petitioner, having the undoubted right lawfully to acquire any form of property, has equally the right to its perfect enjoyment, and, as a necessary incident to that right, the full power accorded to all of appearing in person to prosecute or defend all actions for its protection or preservation." (*Ibid.*)

Although the *Philbrook* court did not expressly rely on any constitutional provision to support its holding, it did refer to the right to acquire and enjoy property, a right expressly guaranteed by the California Constitution. (Cal. Const. art 1., § 1 ["All people are by nature free and independent and have inalienable rights. Among these are . . . acquiring, possessing, and protecting property . . . ."].) Indeed, *Philbrook* was subsequently interpreted as recognizing that the right to self-representation is a necessary incident to the constitutional right to lawfully acquire, possess and protect property. (*O'Connell, supra,* 71 Cal.App. 386.)

*O'Connell* was an action for money had and received filed by an individual who had the claim assigned to him. (*O'Connell, supra,* 71 Cal.App. at p. 387.) The trial court struck the plaintiff's complaint pursuant to former section 300 of the Code of Civil Procedure which stated: " 'No person who has been an attorney and counsellor shall, while a judgment of disbarment or suspension is in force, appear in his own behalf as plaintiff in the prosecution of any action where the subject of said action has been assigned to him subsequent to the entry of the judgment of disbarment or suspension.' " (*O'Connell, supra,* at p. 387.) The *O'Connell* court reversed, finding this statute unconstitutional. The court invoked "[t]he very first section of the constitution of this state" which declares that the right to acquire and protect property is an inalienable right and found that this right "must of necessity include the right to use all proper and legal means to accomplish those ends."

(*Id.* at p. 388.) The court reasoned that "[o]ne of the prime objects of the courts is to protect the constitutional rights of the citizen" and found that "[t]o say that one may not defend his own property is a usurpation of power by the legislature." (*Ibid.*)

The *O'Connell* court also rejected the contention that the plaintiff was attempting to practice law in violation of the judgment of disbarment entered against him: "While the right to practice law is not a constitutional right but rather a mere statutory privilege, the plaintiff here does not purport to be practicing law. He is not acting as an attorney. . . . Appellant, having the right to lawfully acquire property, has under the constitution the equal right to its perfect enjoyment, and, as a necessary incident to that right, the full power accorded to all of appearing in person to prosecute or defend all actions for its protection or preservation." (*O'Connell, supra*, 71 Cal.App. at p. 388, citing *Philbrook, supra*, 111 Cal. 31.) Thus, the court held that when a statute "purports to prevent one from personally appearing in a court of justice in pursuit or defense of a constitutional right—whether of person or property—it must be regarded as unconstitutional." (*O'Connell, supra*, 71 Cal.App. at p. 388.)

*Philbrook* and *O'Connell* illustrate that the right to self-representation in civil proceedings serves a crucial function under California law by ensuring that the citizens of this state can fully exercise their constitutional right to acquire, enjoy and defend their property. By the same token, these cases teach that, although the right to self-representation in a civil proceeding may not be, in and of itself, a constitutional right, depriving individuals of this right can create constitutional problems.

Another constitutional principle which appears to be intimately related to the right to self-representation in civil proceedings is the right to access to the courts. "Access to the courts is indeed a right guaranteed to all persons by the federal and state Constitutions. It is regarded as arising from the First Amendment right to petition the government for redress of grievances [citations], a right also protected by article I, section 3 of the California Constitution." (*Jersey v. John Muir Medical Center* (2002) 97 Cal.App.4th 814, 821 [118 Cal.Rptr.2d 807].) Absent a right to self-representation, an individual without funds to pay an attorney would not be afforded meaningful access to the courts. (*Cf. People v. $30,000 United States Currency* (1995) 35 Cal.App.4th 936, 942–943 [41 Cal.Rptr.2d 748] [discussing general rule that civil litigant has no right to appointed counsel].) Thus, the state-recognized right to self-representation in a civil proceeding serves the important constitutional function of ensuring that the citizens of California have meaningful access to their courts.

Another unique characteristic of the right to self-representation in civil proceedings is that, although not expressly conferred by statute, this right was implicitly acknowledged by our Legislature when it enacted section 391 et seq. of the Code of Civil Procedure, the "vexatious litigant statute." By imposing special rules and restrictions on litigants who appear in propria persona, this statute necessarily acknowledges the basic right to personally appear and conduct one's own litigation in state court. In other words, a statute regulating the exercise of the right to self-representation necessarily acknowledges that such a right exists in the first place. (Cf. *Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 58 [61 Cal.Rptr.2d 694] [rejecting a constitutional challenge to the vexatious litigant statute but also expressly acknowledging that "it is true no citizen is required to hire a lawyer."].)

That a right can be implicit as well as explicit in a statute is illustrated by *People v. Williams, supra,* 110 Cal.App.4th 1577, a case upon which appellants rely. The *Williams* court held that the Sixth Amendment right to self-representation does not extend to defendants in mentally disordered offender commitment proceedings, which are essentially civil in nature. (*Id.* at p. 1588.) The court also found, however, that because defendants in these commitment proceedings have the statutory right to be represented by an attorney (see Pen. Code § 2972), they also have "by implication the right to refuse appointed counsel and represent themselves." (*People v. Williams, supra,* at p. 1591.) In our view, if a statutory right to self-representation can be implied from the express statutory right to be represented by an attorney then, by a parity of reasoning, a statutory right to appear in propria persona can certainly be inferred from a statute imposing restrictions on the right to be an in propria persona litigant.

■ To summarize, the right to represent oneself in civil proceedings conducted in this state, though established by precedent rather than statute, is firmly embedded in California jurisprudence. This right is necessary to protect and ensure the free exercise of express constitutional rights, including the right to acquire and protect property and to access the courts. It is also implicitly recognized by statute. For these reasons, we conclude that the right to represent oneself in civil proceedings is a general law of this state.

■ As noted at the outset of our analysis of this issue, a local ordinance conflicts with general law and is void under article XI, section 7 of the state Constitution if it contradicts general law. (*Sherwin-Williams Co. v. City of Los Angeles, supra,* 4 Cal.4th at p. 897.) "[L]ocal legislation is 'contradictory' to general law when it is inimical thereto. [Citation.]" (*Id.* at p. 898.) The waiver restrictions of section 37.10A(g) are certainly inimical to the state right to represent oneself in a civil proceeding. These restrictions require that

a tenant participate in a legal proceeding in order to waive his rights under the Rent Ordinance and simultaneously deny that tenant the right to represent himself at that proceeding. These restrictions are imposed without regard to their effect on basic rights, at least ones with constitutional implications. Because the waiver restrictions of section 37.10A(g) conflict with general law, this part of the provision is invalid.

For the same reasons, the conduct restrictions imposed by section 37.10A(g) are also invalid. As noted above, the conduct restrictions purport to criminalize efforts by a landlord, or an individual acting on his or her behalf, to obtain a waiver of tenant rights from a tenant who has elected to represent him or herself in a proceeding conducted under the Rent Ordinance. These restrictions expressly make it "unlawful" to "seek or obtain" a waiver except as provided in section 37.10A(g). Since the waiver restrictions are themselves invalid, so too is this part of the provision which purports to criminalize efforts to obtain a waiver that does not comply with the invalid waiver restrictions.

### 3. *Freedom of speech*

We have several additional problems with this rather poorly drafted provision. However, because the parties and the trial court have not addressed these problems, we limit our comments to the First Amendment, which the parties have addressed in connection with section 37.10A(c).

The conduct which section 37.10A(g) characterizes as "unlawful," and purports to criminalize, is *speech*; the conduct restrictions preclude a landlord or one acting on his or her behalf from "seek[ing]" or obtain[ing]" a waiver of rights from a self-representing tenant. In other words, like section 37.10A(c), the conduct restrictions imposed by section 37.10A(g) constitute a content-based speech regulation. Appellants have not attempted to and, on this record, simply cannot justify the speech restrictions imposed by section 37.10A(g).[6]

---

[6] Furthermore, because the communications that this provision punishes would routinely be made in anticipation of, if not during, litigation under the Rent Ordinance, the litigation privilege would also be implicated. (See, generally, Civ. Code, § 47, subd. (b); *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194–1195 [17 Cal.Rptr.2d 828, 847 P.2d 1044].)

## IV. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Ruvolo, J., concurred.